THE STATE EX REL. ESTATE OF MILES ET AL. *v.* VILLAGE OF PIKETON ET AL.

[Cite as *State ex rel. Estate of Miles v. Piketon,*
121 Ohio St.3d 231, 2009-Ohio-786.]

232

(No. 2008–0782—Submitted February 3, 2009—Decided March 4, 2009.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel a village and its mayor, clerk-treasurer, and police chief to satisfy in full a 2003 judgment in the amount of $837,518.22, plus interest, entered against the village's former police chief. Because relators have not established their entitlement to the requested extraordinary relief, we deny the writ.

{¶ 2} In January 2000, Jerry D. Miles ("Miles") and Deneen Renee Tomlison ("Tomlison") were found shot to death in Miles's mobile home in Piketon, Ohio. While acting in his capacity as the Piketon Chief of Police, Nathaniel Todd Booth represented to the public that Miles had murdered Tomlison and had then committed suicide. Booth resigned as village police chief in April 2000.

### Miles v. Booth

{¶ 3} In December 2001, Miles's mother, Betty S. Miles, individually and as administrator of Miles's estate, and Miles's father and brother, relators, filed a complaint in the Pike County Court of Common Pleas against Booth, individually and in his capacity as the former village police chief. The village was not named as a defendant. Relators alleged that Booth had negligently, wantonly, recklessly, or willfully failed or refused to perform an adequate investigation of the Miles–Tomlison deaths and had removed and destroyed property and evidence from the crime scene.

{¶ 4} Relators claimed that Booth's actions proximately resulted in the inability of relators to prove their decedent's homicide, pursue their wrongful-death and survival claims against the persons responsible for the murder, and adequately defend the wrongful-death action brought against them by Tomlison's estate. They also claimed that they had suffered serious emotional distress from Booth's actions. Relators alleged that Booth had committed these actions "[w]hile acting in his capacity as Chief of Police of Piketon." They sought compensatory and punitive damages in excess of $25,000 on each of four counts.

{¶ 5} Booth was no longer the village police chief and was served with a courtesy copy of the complaint and a summons at his personal residence. In the "proof of service" certification of the complaint, one of relators' attorneys stated that he had served a copy of the complaint on the attorney for Piketon.

{¶ 6} In July 2002, relators filed a motion for summary judgment in which they claimed that Booth had failed to secure the crime scene and that several items had been stolen from the property. Relators argued that Booth's failure to

conduct a proper investigation prevented them from pursuing their legal remedies against the perpetrators of the crime and had resulted in emotional distress. At a pretrial conference attended by relators' counsel, Booth, and the village attorney, the common pleas court directed Booth "to discuss the matter of counsel with [the village attorney] and was given thirty days to obtain counsel, either through the Village, the Village's insurer, or at his own expense, and/or file any memoranda contra [relators'] motion for summary judgment, if he so chose."

{¶ 7} After Booth failed to respond to relators' motion for summary judgment, the common pleas court granted it:

{¶ 8} "Having construed the evidence submitted most strongly in favor of defendant, reasonable minds can come to but one conclusion and that conclusion is adverse to defendant. Thus, the Court hereby finds that there is no genuine issue as to any material fact and that plaintiffs are entitled to judgment as a matter of law as to the issue of liability against Nathaniel Todd Booth, both individually and in his capacity as the Chief of Police of the Village of Piketon, Ohio.

{¶ 9} "Specifically, the Court finds that while he was acting within the course and scope of his employment, defendant's acts or omissions in the investigation of this matter were conducted in a reckless manner, and reflected a reckless indifference to the rights of the families involved. R.C. 2744.03(A)(6) [political subdivision employees are not immune from liability if their acts were reckless]. The Court further finds that as a result of defendant's reckless indifference, plaintiffs have suffered damages, including but not limited to serious emotional distress."

{¶ 10} In December 2002, the common pleas court held a hearing to determine the damages suffered by relators. At the hearing, Booth represented himself and "indicated that he had tried again to contact * * * the Village's attorney[ ] to discuss with him representation by the Village but received no response from [him] or any representative of the Village of Piketon." Booth did not introduce any evidence to rebut relators' evidence.

{¶ 11} On January 2, 2003, the common pleas court entered judgment in favor of relators and against Booth in the amount of $837,518.22, plus interest at the rate of ten percent.

## Subsequent Activities

{¶ 12} A few months after the judgment against Booth, relators filed a supplemental petition in the common pleas court pursuant to R.C. 3929.06, which addresses insurance, against Piketon and the Public Entities Pool of Ohio, seeking to have them pay the judgment because of their failure to defend Booth,

as the city attorney had been served with the complaint. Relators later voluntarily dismissed their supplemental petition without prejudice.

{¶ 13} Booth subsequently died, and relators filed a claim against his estate for the amount of the judgment.

## Mandamus Case

{¶ 14} In February 2008, relators requested that the village pay the January 2003 judgment with interest. The village failed to pay the judgment.

{¶ 15} A couple of months later, relators filed this action for a writ of mandamus to compel respondents to pay the January 2, 2003 judgment of $837,518.22, plus interest. Respondents filed an answer and a motion for judgment on the pleadings. We granted an alternative writ, and the parties filed evidence and briefs. Respondents' evidence established that Piketon has now filed a motion in the common pleas court to vacate the 2003 judgment to the extent that relators now claim it is a judgment against the village.

{¶ 16} This cause is now before the court for our determination of the merits.

## Mandamus

{¶ 17} To be entitled to the requested writ of mandamus, relators must establish a clear legal right to enforcement of the judgment, a corresponding clear legal duty on the part of respondents to pay it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Couch v. Trimble Local School Dist. Bd. of Edn.*, 120 Ohio St.3d 75, 2008-Ohio-4910, 896 N.E.2d 690, ¶ 12.

### Clear Legal Right and Clear Legal Duty

{¶ 18} Relators claim they are entitled to enforcement of the judgment obtained against the village's former police chief based on the village's obligation to pay it because the former police chief was found liable in his official, as well as his individual, capacity. Relators rely on *State ex rel. Gill v. Winters* (1990), 68 Ohio App.3d 497, 504, 589 N.E.2d 68, in which an appellate court held, "[I]t appears well settled in Ohio * * * that when a judgment is rendered for or against an officer of a municipal corporation in his official capacity, in matters to which he is entitled to represent it, the judgment is binding against the corporation, or another officer representing the corporation." See also *N. Olmsted v. Eliza Jennings, Inc.* (1993), 91 Ohio App.3d 173, 185, 631 N.E.2d 1130. Relators rely on this general rule, as set forth in the appellate decision in *Gill*, to assert that they have established the requisite legal right and legal duty to be entitled to the requested writ of mandamus.

{¶ 19} In *Gill*, 68 Ohio App.3d at 504–505, 589 N.E.2d 68, the appellate court relied on Comment *e* to Section 36 of the Restatement of the Law 2d, Judgments (1982), which provides:

{¶ 20} "A public official sued as an individual nevertheless participates in the action in his official capacity if the remedy sought is that of compelling, restraining, or making declarations concerning performance of acts in the course of his official duties, or the restitution of property over which he asserts control in virtue of his official authority. *If the remedy sought is damages and the public body of which he is an official is solely responsible for paying them, the public official likewise appears in his official capacity and is in effect merely a formal party.* * * * *The determination in such circumstances is therefore binding on the governmental body of which he is an official* and on his successors in office, but in accordance with the rule stated in § 36, is not binding on him personally. Where, however, the remedy is for damages that he is asserted to have a personal obligation to pay, he participates in his individual capacity." (Emphasis added.)

{¶ 21} In the reporter's note to a tentative redraft of the analogous section from the first Restatement, Comment *e* acknowledged the following regarding suits against governmental officials sued in their official capacity:

{¶ 22} "The rules concerning the capacity in which a public official participates in litigation are an aspect of the richly complex law of suits involving the government and government officials and employees. A central issue is whether relief can be obtained in effect against the government but, in avoidance of the barrier of the sovereign immunity doctrine, through the device of a suit against an official. When an action may be maintained through this device, *the official concerned participates in his capacity as such, with preclusive effects on the government and the official's successors.* When the official is charged with a liability to which he himself must respond, however, he participates as an individual." (Emphasis added and citations omitted.)

{¶ 23} Based on the foregoing principles, some courts have held, "It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself." *Kelly v. New Haven* (2005), 275 Conn. 580, 595, 881 A.2d 978. "Official-capacity suits * * * 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham* (1985), 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114, quoting *Monell v. New York City Dept. of Social Servs.* (1978), 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611, fn. 55. Nevertheless, " '[i]t is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void.'" *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2000), 87

Ohio St.3d 363, 366–367, 721 N.E.2d 40, quoting *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 64, 59 O.O. 74, 133 N.E.2d 606.

{¶ 24} For the following reasons, the village is not bound by the judgment entered against its former police chief because the common pleas court never obtained jurisdiction over the village in relators' case against the former police chief.

{¶ 25} First, there is no evidence that relators ever effected service of process as required by Civ.R. 4 upon Piketon in their common pleas court action against Piketon's former police chief. Under Civ.R. 4.2(M), service of process upon a "municipal corporation or upon any of its offices, departments, agencies, authorities, institutions or administrative units [is made] by serving the officer responsible for the administration of the office, department, agency, authority, institution or unit or by serving the city solicitor or comparable legal officer."

{¶ 26} Second, there was also no evidence that service of process in relators' case against Booth was waived by Piketon in accordance with the applicable rule. See Civ.R. 4(D) ("Service of summons may be waived in writing by any person entitled thereto under Rule 4.2 who is at least eighteen years of age and not under disability").

{¶ 27} Third, there was no voluntary submission to the court's jurisdiction by the village. " 'In order for a judgment to be rendered against a defendant when he is not served with process, there must be a showing upon the record that the defendant has voluntarily submitted himself to the court's jurisdiction or committed other acts which constitute a waiver of the jurisdictional defense.' " *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192, ¶ 20, quoting *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156–157, 11 OBR 471, 464 N.E.2d 538. Although there is some minimal indication that the village had notice of the common pleas court case and that the village attorney was present at a pretrial conference during the proceedings, the village never entered a formal appearance in the case and was never treated as a party to the case. Under these limited facts, we hold that the village did not voluntarily submit to the court's jurisdiction or otherwise waive any jurisdictional defense.

{¶ 28} Fourth, the *Gill* rule that judgment against an official binds the corporation does not apply. In *Gill*, the judgment that bound the city of Wellston had been instituted initially against the former mayor when he still held office, and the city in that case had actual notice of and entered an appearance in the case in representing its mayor. Booth, by contrast, was no longer a public official when the litigation was commenced.

{¶ 29} Relators appear to focus on whether Booth was entitled to represent the village at the time that he had performed the inadequate criminal investigation giving rise to relators' claims against him. But "the proper focus is on whether

the legal rights of the party to be estopped were adequately represented by the party to the first litigation." *State v. Lemmer* (Minn.2007), 736 N.W.2d 650, 661. The "crucial point is whether or not in the earlier litigation the representative of the [governmental entity] had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co. v. Adkins* (1940), 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263. That is, the dispositive issue is whether the party sought to be bound by the previous determination "had a controlling participation in the first action." *Lemmer,* 736 N.W.2d at 661.

{¶ 30} Here, Booth did not—and could not—adequately represent the village's interests in the previous case. There is no evidence that the village controlled Booth's defense or that it participated in the case aside from apparently advising Booth that it would not represent him. It could thus be inequitable for relators to circumvent the immunity defense that would have been raised by the village if it had been properly served and made a party to the case by relators' choice of naming only the former police chief as a defendant and serving him with the complaint and summons at his personal residence. The binding effect of res judicata has been held not to apply when fairness and justice would not support it. See *Davis v. Wal–Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 491, 756 N.E.2d 657; *Lucas v. Porter,* 2008 ND 160, 755 N.W.2d 88, ¶ 22 ("Fundamental fairness underlies the determination of privity").

{¶ 31} Finally, because the village was never a party to the common pleas court action against its former police chief, R.C. 2744.04(A) bars this mandamus action because it was not brought within two years after the cause of action accrued. R.C. 2744.04(A) provides:

{¶ 32} "An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subroga-tion, shall be brought within two years after the cause of action accrues * * *."

{¶ 33} Therefore, relators have established neither a clear legal right to the requested extraordinary relief nor a corresponding clear legal duty on the part of the village to provide it.

### Mandamus as the Appropriate Legal Remedy

{¶ 34} "Mandamus will not issue if there is a plain and adequate remedy in the ordinary course of law." *State ex rel. McClaran v. Ontario,* 119 Ohio St.3d 105, 2008-Ohio-3867, 892 N.E.2d 440, ¶ 15; R.C. 2731.05.

{¶ 35} In *State ex rel. Shimola v. Cleveland* (1994), 70 Ohio St.3d 110, 112–113, 637 N.E.2d 325, we recognized a limited exception to the general rule that

mandamus is not available to enforce a judgment because other remedies are available. *State ex rel. Natl. City Bank v. Maloney,* 103 Ohio St.3d 93, 2004-Ohio-4437, 814 N.E.2d 58, ¶ 12. In *Shimola,* we held that mandamus was appropriate to enforce a judgment against a political subdivision in certain tort actions because R.C. 2744.06(A) made the subdivision immune from execution. See R.C. 2744.06(A) ("Real or personal property, and moneys, accounts, deposits, or investments of a political subdivision are not subject to execution * * * to satisfy a judgment rendered against a political subdivision in a civil action to recover damages for injury, death, or loss to person or property caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function").

{¶ 36} *Shimola,* however, is inapplicable here because in that case, the successful relators had obtained three separate judgments against the city of Cleveland before they sought a writ of mandamus to compel the city to satisfy those judgments. There was thus no question in that case as to whether the city had been properly served with process in the cases that formed the basis for the writ. Here, by contrast, relators have obtained no judgment against Piketon.

{¶ 37} Therefore, relators have also failed to establish that they lack an adequate remedy in the ordinary course of law.

### Conclusion

{¶ 38} Based on the foregoing, relators have not established their entitlement to the requested extraordinary relief in mandamus. Our holding is consistent with the " 'principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' " *Taylor v. Sturgell* (2008), —— U.S. ——, 128 S.Ct. 2161, 2166–2167, 171 L.Ed.2d 155, quoting *Hansberry v. Lee* (1940), 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22. Thus, we deny the writ to compel respondents to satisfy the judgment of $837,518.22 entered against the village's former police chief.

Writ denied.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Philip M. Collins & Associates Co., L.P.A., Philip M. Collins, and Allison K. Tracey; and Miller & Rodeheffer and Margaret Apel Miller, for relators.

Isaac, Brant, Ledman & Teetor, L.L.P., Douglas J. Suter, and Douglas C. Boatright, for respondents.