[Cite as *Lycan v. Cleveland*, 2014-Ohio-203.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99698**

## JANINE LYCAN, ET AL.

PLAINTIFFS-APPELLEES

vs.

## CITY OF CLEVELAND

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-686044

**BEFORE:** S. Gallagher, P.J., Blackmon, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 23, 2014

**ATTORNEYS FOR APPELLANT**

Barbara Langhenry
Director of Law

BY:   Jennifer Meyer
          Gary S. Singletary
Assistant Directors of Law
601 Lakeside Avenue, Rm. 106
Cleveland, OH   44114

**ATTORNEYS FOR APPELLEES**

W. Craig Bashein
Bashein & Bashein Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, OH   44113

Blake A. Dickson
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, OH   44122

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Defendant-appellant city of Cleveland appeals from the trial court's order granting class certification. For the reasons stated herein, we affirm.

{¶2} There has been considerable debate whether red-light cameras serve to make the roads safer or whether their use is about generating revenues for the cities that deploy them. Irrespective of that controversy, we are mindful that the imposition of a $100 civil penalty resulting from a red-light camera violation has significant value to the individual. At issue in this case is whether the plaintiffs may maintain as a class action their claims for unjust enrichment and declaratory relief arising from the enforcement of a red-light camera ordinance against the individuals in the putative class.

{¶3} Former Cleveland Codified Ordinances ("CCO") 413.031 authorized the use of automated traffic cameras to impose civil penalties on "the owner of a vehicle" for red light and speeding offenses. Pursuant to former CCO 413.031(p)(3), a "vehicle owner" was defined as "the person or entity identified by the Ohio Bureau of Motor Vehicles, or registered with any other State vehicle registration office, as the registered owner of a vehicle."

{¶4} On February 25, 2009, plaintiff Janine Lycan filed a class action complaint against the city, alleging that the city unlawfully enforced former CCO 413.031 against her. The action arose following this court's decision in *Dickson & Campbell, L.L.C. v. Cleveland*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964 (8th Dist.). In *Dickson*, this court found nothing ambiguous about the plain meaning of the word

"vehicle owner" and determined that former CCO 413.031 does not impose liability on a lessee of a vehicle.[1]

{¶5} Lycan claimed that she was not the owner of the vehicle depicted in the photograph taken by the automated traffic camera. Lycan sought equitable relief for unjust enrichment, as well as declaratory and injunctive relief against the city.[2] Lycan also filed a motion for class certification.

{¶6} Thereafter, a first amended class action complaint was filed, which in addition to Lycan included as named plaintiffs Thomas Pavlish, Jeane Task, Lindsey Charna, Ken Fogle, John T. Murphy, and ITW Hobart.[3] The amended complaint alleged that none of the plaintiffs was a "registered owner" of the vehicle and that the city unlawfully collected the fines from those individuals. Each plaintiff except Task paid the $100 civil fine without challenging it. Although Task did not pay the fine, she was assessed additional penalties as a result. The city filed an answer to the second amended complaint.

{¶7} The city then filed a motion for judgment on the pleadings. The trial court granted this motion on the basis that the plaintiffs had waived their right to contest the

---

[1] CCO 413.031 was amended effective March 11, 2009, to permit fines to be imposed against lessees as well as registered owners.

[2] The city filed a motion to dismiss the complaint that was later denied by the court.

[3] ITW Hobart was later removed from the action through a notice of partial voluntary dismissal. The remaining plaintiffs are appellees herein.

citation by failing to appeal and paying the fines. Because of this determination, the trial court further denied the motion for class certification.

{¶8} On appeal in *Lycan v. Cleveland*, 8th Dist. Cuyahoga No. 94353, 2010-Ohio-6021 ("*Lycan* I"), this court reversed the judgment on the pleadings on the claim for unjust enrichment and the claim for declaratory relief, but affirmed on the claim for injunctive relief. In that opinion, the court determined as follows:

> While we recognize that [the plaintiffs] had the opportunity to challenge the imposition of the fines before they paid them, this opportunity does not necessarily foreclose any right to equitable relief. * * * We cannot say, on the face of the complaint, that [the plaintiffs] can prove no set of facts entitling them to relief. Among other things, the question of whether [the plaintiffs] were induced to pay the fines by a mistake of fact or law and whether they were coerced to pay be a threat of additional penalties may be relevant to this question.

*Id.* at ¶ 8. The court also reversed and remanded for further proceedings on the question of class certification. *Id*. at ¶ 11.

{¶9} Thereafter, the plaintiffs filed a motion for partial summary judgment, claiming all of the elements of their unjust enrichment claim were met. The city opposed the motion and filed its own motion for summary judgment. On February 8, 2013, the trial court granted the plaintiffs' motion for partial summary judgment.

**{¶10}** The trial court conducted a hearing on February 19, 2013. Thereafter, the trial court granted the plaintiffs' motion for class certification on February 26, 2013. The trial court found that all of the requirements for class certification were met and certified the following class:

> All persons and entities who were not a "vehicle owner"under CCO 413.031, but were issued a notice of citation and/or assessed a fine under that ordinance, prior to March 11, 2009, by/or on behalf of Defendant, City of Cleveland.

**{¶11}** Excluded from the class were the following:

1) Any of the above described class member[s] who filed a lawsuit involv[ing] any of the claims included in the class;
2) Immediate families of class counsel, the judge of this court, defendant's counsel of record and their immediate families; and
3) All persons who make a timely election to be excluded from the class for the 23(B)(3) claim.

**{¶12}** The city timely appealed the trial court's ruling on class certification. While the city's brief lists an assignment of error relating to the trial court's granting of partial summary judgment, this ruling is not yet appealable and is not addressed in the substance of appellant's brief. Rather, the issues raised on appeal pertain to whether the Civ.R. 23(A) class action requirements were met and whether the action is barred by res judicata.

I. Res Judicata

**{¶13}** We first address the issue of res judicata. As a preliminary matter, the parties dispute whether *Lycan* I established the law of the case insofar as the court determined that the plaintiffs' failure to pursue administrative review before paying the

fine "does not necessarily foreclose any right to equitable relief." However, *Lycan* I did not address the issue of res judicata.

{¶14} In *Carroll v. Cleveland*, 6th Cir. No. 11-4025, 2013 U.S. App. LEXIS 7178 (Apr. 5, 2013), a "copycat" lawsuit raising constitutional takings challenges, the federal court found that where the appellants paid their fines rather than contesting their citations through the administrative process provided under CCO 413.031, claim preclusion barred their claims. *See also Foor v. Cleveland*, N.D. Ohio No. 1:12 CV 1754, 2013 U.S. Dist. LEXIS 115552 (Aug. 14, 2013). We are not inclined to follow such an expansive view of res judicata.

{¶15} The doctrine of res judicata provides that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. The plaintiffs in this matter paid the civil fine assessed by the city for a red-light camera violation. Res judicata does not apply because there was never an actual "judgment" rendered by a court, or administrative tribunal, of competent jurisdiction.[4] Even if an administrative decision had been rendered, the claims for unjust enrichment and declaratory judgment

---

[4] Not only was there no judgment when fines were paid, but also, when a citation was not paid, no reduction to judgment occurred. We question the city's ability to collect upon fines that have not been converted to civil judgments in accordance with a defendant's due process rights. CCO 413.031(k)(4) provides that "[a] decision in favor of the City of Cleveland may be enforced by means of a civil action or any other means provided by the Revised Code."

were not claims that could have been litigated or decided by the parking violations bureau.

{¶16} Finally, we recognize that the Ohio Supreme Court found the civil hearing process provided by CCO 413.031(k) to involve the exercise of quasi-judicial authority. *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 15. We are also aware that in certain situations, res judicata has been found to apply to quasi-judicial decisions of administrative agencies. *See Grava*. However, "[t]he binding effect of res judicata has been held not to apply when fairness and justice would not support it." *The State ex rel. Estate of Miles v. Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, 903 N.E.2d 311, ¶ 30.

{¶17} While we have found no authority in Ohio on the issue, courts in other states have generally declined to apply res judicata or collateral estoppel with regard to traffic infractions. *State v. Walker*, 159 Ariz. 506, 768 P.2d 668, 671 (Ariz.App.1989); *Hadley v. Maxwell*, 144 Wash.2d 306, 312-313, 27 P.3d 600 (2001). As a practical matter, traffic infractions tend to be minor in nature, are informally adjudicated, and are often uncontested. With limited civil sanctions, there is little incentive to contest a citation or to vigorously litigate the matter. Under CCO 413.031, the maximum penalty that may be imposed is $200. Late penalties are authorized if the penalty is not paid within 20 days and 40 days from the date the ticket is mailed to the offender. If the penalty is not timely paid, the recipient is subject to the additional penalties and collection efforts. There was

evidence presented at the class certification hearing that the cost to exercise the right to appeal was as much as the $100 fine itself.

{¶18} Further, the administrative procedure provided by CCO 413.031(k) is designed to provide a simple and expeditious means of disposing of literally thousands of such citations every year. To allow res judicata or collateral estoppel to apply to such proceedings would circumvent the purposes in creating the expedited dispositional procedures for civil traffic violations.

{¶19} For these reasons, we conclude fairness and justice would not support the application of res judicata in this case. We shall proceed to address the challenge to class certification.

II.     Class Action Certification

{¶20} A trial court has broad discretion in determining whether to certify a class action, and a reviewing court will not disturb the determination absent an abuse of discretion. *Cullen v. State Farm Mut. Auto. Ins. Co.*, Slip Opinion No. 2013-Ohio-4733, ¶ 19. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Id*.

{¶21} In order to maintain a class action, the plaintiff must provide evidence to establish by a preponderance of the evidence each of the seven requirements for maintaining a class action under Civ.R. 23. *Id.* at ¶ 15. Those requirements are as follows:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class;

(3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Id.* at ¶ 12, quoting *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 6; and *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 71, 694 N.E.2d 442 (1998).

**{¶22}** "[A] trial court must conduct a rigorous analysis when determining whether to certify a class pursuant to Civ.R. 23 and may grant certification only after finding that all of the requirements of the rule are satisfied[.]" *Cullen* at ¶ 16. When conducting this analysis, the trial court is required "to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." *Id.*

    (1)    Identifiable Class

**{¶23}** The first requirement of an identifiable class requires that the class definition be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *Hamilton* at 71-72. In other words, "the class definition must be precise enough 'to permit identification within a reasonable effort.'" *Id.* at 72, quoting *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988).

**{¶24}** In this matter, the class definition was limited to "[a]ll persons and entities who were not a 'vehicle owner' under CCO 413.031, but were issued a notice of citation

and/or assessed a fine under that ordinance, prior to March 11, 2009, by/or on behalf of Defendant, City of Cleveland." The trial court determined that the class definition "leaves no room for ambiguity." The city argues that the class definition is overbroad.

{¶25} Contrary to the city's assertion, the class definition does not attempt to encompass "anyone and everyone." Quite simply, the class is defined to include persons who were not a "vehicle owner" under former CCO 413.032. Former CCO 413.031(p)(3) defined a vehicle owner in terms of the vehicle's registered owner. Thus, a non-vehicle owner is in the class regardless of whether he or she leased the vehicle or not.

{¶26} Also, the class definition is not rendered overbroad by this court's decision in *Dickson*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, or by the fact that the class definition encompasses potential plaintiffs beyond the scope of lessees. Although *Dickson* involved an adjudicated lessee, the court found no ambiguity in the ordinance and recognized that there is "nothing ambiguous about the plain meaning of the words 'vehicle owner.'" *Id*. at ¶ 34-39.

{¶27} Insofar as the city maintains that the class definition encompasses individuals who may have been identified as the driver of the vehicle by an affidavit from the owner filed under CCO 413.031(k), these individuals nonetheless fall within the class of individuals who plaintiffs maintain did not qualify as a "vehicle owner" under CCO 413.031.

**{¶28}** Finally, although appellee Task did not pay the fine for the violation notices she received, she was assessed nonpayment penalties and subjected to collection efforts and has a valid claim for declaratory relief. Further, a subclass could be created for Task and similarly situated class members who were charged under the former ordinance but did not pay the fine. *See* Civ.R. 23(C)(4)(a).[5]

**{¶29}** Our review reflects that the class definition herein is precise enough to permit identification of citation recipients who were not a "vehicle owner" under former CCO 413.031 within a reasonable effort.

(2)    Class Membership

**{¶30}** The second requirement for class certification is that the class representative must have proper standing, which requires that "the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442. There is competent evidence in the record that each of the appellees received a notice of liability from the city's parking violations bureau that asserted a violation photographed by an automatic traffic enforcement system, and that each of the appellees was not the "vehicle owner." Each appellee, with the exception of Task, paid the civil fine. The appellees possess the same interest and suffer the same injury as the class they seek to represent.

---

[5]    That rule provides, "When appropriate (a) an action may be brought or maintained as a class action with respect to particular issues, or (b) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

**{¶31}** The city argues that appellee Task does not have standing because she did not pay the fine. However, Task was assessed additional penalties for not paying the fine; she received collection notices; and she has not been released of the debt. As such, she has standing to pursue the claim for declaratory relief. As noted above, a subclass may be created for those class members who are similarly situated to Task. *See* Civ.R. 23(C)(4)(a).

(3)     Numerosity

**{¶32}** Civ.R. 23(A)(1) requires that the class be "so numerous that joinder of all members is impracticable." In finding this requirement was met, the trial court considered the following evidence:

The City of Cleveland has issued more than 357,000 total citations while [former] CCO 413.031 was in effect (December 2005 until March 11, 2009). During the period the ordinance was in effect, 8.4% of the total vehicles registered in Cuyahoga County were leased vehicles. Based on statistical probability, the total class members in this case is likely in excess of 30,000 notice recipients. According to Dr. Jim Nieberding there is a 99% statistical probability that the number of notice of violations issued to lessees is at 23,000.

**{¶33}** At the class certification hearing, the parties stipulated that numerosity was not an issue in the case.

(4)     Commonality

**{¶34}** The commonality requirement of Civ.R.(A)(2) requires the presence of "questions of law or fact common to the class." This requirement generally is given a permissive application, and if there is common nucleus of operative facts or a common liability issue, the rule is satisfied. *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442.

**{¶35}** Here, the putative class presents common legal claims for unjust enrichment and/or declaratory relief. All claims arise from the city's common practices and procedures in enforcing traffic citations and/or assessing fines under former CCO 413.031 against persons or entities who were not "vehicle owners." Despite the city's assertion of a defense of unclean hands against individuals who admitted committing the traffic offense, the plaintiffs' claims arise from the same common nucleus of operative facts, and the questions concerning the city's liability are common to the class.

(5)     Typicality

**{¶36}** The typicality requirement is met "where there is no express conflict between the class representatives and the class." *Hamilton* at 77. The trial court found no issue with the typicality requirement. The court further found no unique defenses to the claims of the named class members and that the named class members' interests are aligned with all putative class members' claims.

**{¶37}** Our review reflects that the claims of the class representatives involve the same legal theories as those of the putative class and arise from the same practices and procedures of the city in enforcing former CCO 413.031. While the city attempts to draw out distinguishing facts, "'when it is alleged that the same unlawful conduct was

directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 727 N.E.2d 1265 (2000), quoting 1 Newberg on Class Actions (3 Ed.1992) 3-74 to 3-77, Section 3.13. In this instance, the claims of the class representatives are typical of the claims of all class members.

(6)    Adequacy

**{¶38}** Adequacy in class actions looks to both the class representative and counsel. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091. A class representative is deemed adequate "so long as his or her interest is not antagonistic to that of other class members." *Hamilton*, 82 Ohio St.3d at 78, 694 N.E.2d 442.

**{¶39}** The record reflects that the class representatives possess the same interest in the outcome of the litigation as each of the class members. There is nothing indicative of any conflict or antagonistic interest between the representatives and the class. Further, the trial court found class counsel is experienced with this type of litigation. While the city takes issue with Lycan's employment with class counsel, there is no evidence to suggest that this would impair her ability to represent the class.

(7)     Civ.R. 23(B)(3)

**{¶40}** The trial court found that the requirements of Civ.R. 23(B)(3) were met. Civ.R. 23(B)(3) requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "that a class action is the superior method superior to other available methods for the fair and efficient adjudication of the controversy."   "For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must present a significant aspect of the case.   Furthermore, they must be capable of resolution for all members in a single adjudication."   *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 204, 509 N.E.2d 1249 (1987).

**{¶41}** The trial court found, "[a]ll the claims arise from [the city's] common practices and procedures in enforcing [former] CCO 413.031."   The city argues individual determinations will be required as to which class members were lessees or someone other than the owner of the vehicle.   However, the predominant issues relate to the lawfulness of the city's enforcement of former CCO 413.031 against persons and entities who were not "vehicle owners."

**{¶42}** Former CCO 413.031 defined a "vehicle owner" as "the person identified by the Ohio Bureau of Motor Vehicles, or registered with any other State vehicle registration office, as the registered owner of a vehicle."   The ordinance also indicated that such identification is "prima facie evidence" of ownership.

{¶43} Maria Vargas, the administrator of the Cleveland Parking Violations Bureau, Photo Safety Division, indicated in her deposition that a committee decision had been made to include lessees within the definition of "owners" and that a business rule was adopted to that effect. While Vargas indicated there was a lack of information to identify leased vehicles, a representative for ACS explained that the file returned from the Ohio Bureau of Motor Vehicles would plainly indicate whether the vehicle was "leased" and would identify the leaseholder. In any event, such file would be useful for determining whether the person was a registered owner of the vehicle.

{¶44} The city also argues that individual determinations will be required as to which notices were paid, ignored, or waived. Administrator Vargas stated in her deposition that delinquency notices were sent to individuals who ignored the notices and that the Affiliated Computer Services ("ACS") system was updated to reflect payment information. Violations that remained unpaid were turned over to a collection agency. Vargas conceded that there is an electronic record of everyone who received a notice, payment information, and delinquency and collection data. Vargas also confirmed that notices were issued to nonowner drivers who were identified on notices issued to vehicle owners and that this information was kept in the ACS system. There is also evidence that collection efforts were made against persons who did not pay the fine, as was the case with Task.

{¶45} Insofar as some members paid the fine and others did not, and with respect to nonowner drivers, we have already recognized that subclasses may be created. While

differences may exist as to the particularized fact patterns, "[t]he mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 10.

**{¶46}** Here, each class member presents common questions concerning their requests for equitable and/or declaratory relief that may be resolved on a class-wide basis. Our review reflects that common proof exists concerning their claims and that common questions predominate over questions affecting only individual members.

**{¶47}** The trial court also found that a class action is the superior method to other available methods for the fair and efficient adjudication of the controversy. The superiority of the class action is evident. Because certification was appropriate under Civ.R. 23(B)(3), we need not consider whether certification would also have been appropriate under Civ.R. 23(B)(2).

**{¶48}** Upon our review, we find no abuse of discretion by the trial court in its certification of the class.

**{¶49}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
TIM McCORMACK, J.,  CONCUR