[Cite as *Cleveland v. ProTerra, Inc.*, 2021-Ohio-1086.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

CITY OF CLEVELAND,                                   :

    Plaintiff-Appellee,                          :

                                   No. 109696

    v.                                                        :

PROTERRA INC.,                                       :

    Defendant-Appellant.                         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 1, 2021

---

Civil Appeal from the Cleveland Municipal Court
Housing Court Division
Case No. 2015 CRB 025487

---

*Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, and William
H. Armstrong, Jr., Assistant Director of Law, *for appellee*.

Roetzel & Andress, L.P.A., and Diana M. Feitl, *for appellant*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant ProTerra, Inc. ("appellant") appeals from the housing court's judgment reinstating a fine of $100,000 for a violation of its community control sanctions. Appellant operates what it describes as a temporary

storage, material handling, and screening operation in a Cleveland neighborhood. In 2015, it was found to be in violation of the city's zoning code for operating the business without a certificate of occupancy. Appellant pleaded no contest to a misdemeanor offense, and the housing court imposed a fine of $400,000 and also placed appellant on community control. Since its conviction, appellant submitted applications to the city of Cleveland for a certificate of occupancy multiple times without success. The housing court ultimately reduced the fine to a $100 monthly payment in June 2018 in order to allow appellant to work on a solution for the massive accumulation of dirt its operation created. The subject of this appeal stemmed from the housing court's finding appellant in violation of its community control in February 2020 and reinstating $100,000 of the original fine.

{¶ 2} On appeal, appellant presents the following three assignments of errors for our review:

I.  Appellant's plea is void because Appellant never enter[ed] a plea of no contest on the record and the court failed to fulfill its obligations under Crim.R. 11.

II.  The Court's February 26, 2020, judgment entry is void because if fails to meet the requirements of Criminal Rule 32(C) and R.C. 2929.25.

III.  The Court abused its discretion by finding that ProTerra violated its community control.

{¶ 3} Our careful review of the lengthy record indicates that appellant's claim regarding its no-contest plea is barred by res judicata but, as we explain below, the city failed to prove appellant violated its community control at the February

2020 community control violation hearing. While we recognize the housing court's frustration at the slow progress made by appellant in ridding a nuisance it had created in the community, we are compelled to reverse the housing court's judgment finding appellant in violation of the existing terms of its community control.

## A. Factual Background and Procedural History

{¶ 4} Appellant operates its dirt storage and processing business at 16569 St. Clair Avenue in Cleveland. It receives, stores, and manages dirt and related materials. On April 10, 2015, the city's building and housing inspector Dennis Garcia inspected the premises and observed a massive accumulation of dirt. He issued a notice on April 13, 2015, citing appellant for a violation of the city's zoning code, specifically, Cleveland Codified Ordinances ("C.C.O.") 327.02(c), for using the property to store and manage dirt without a certificate of occupancy.

### 1. Complaint and No-Contest Plea

{¶ 5} On November 21, 2015, the city filed a complaint against appellant at the Cleveland Municipal Court, Housing Division, alleging appellant failed to comply with the April 13, 2015 notice in violation of C.C.O. 327.02(c), an unspecified misdemeanor offense. The complaint stated that each day of noncompliance shall constitute a separate offense pursuant to C.C.O. 327.99(a).

{¶ 6} On July 27, 2016, the trial court held a hearing on the matter. The city's inspector reported that the city sent the violation notice on April 13, 2015, but, for over a year, appellant continued to operate its business without a certificate of occupancy. The city, however, represented to the court that the parties were

working toward a resolution of the matter and the city would recommend a $775,000 fine with 95% mitigated upon compliance.

{¶ 7} Before accepting appellant's change of plea from not guilty to no contest, the court addressed appellant's corporate representative Jonathan Varcelli, advising him that by pleading no contest, the corporation would give up its right to a jury trial, the right against self-incrimination, and the right to have its guilt proven beyond a reasonable doubt.

{¶ 8} The court also informed appellant that it could be liable for a fine of $5,000 per day for each day of noncompliance from May 14, 2015, to October 19, 2015. The court, in addition, advised appellant that as part of its community control it must "follow the plan that you've agreed upon to abate the nuisance at the property within the time period that's set by the City and the inspector." The court advised that the consequence of noncompliance is "a severely large fine."

{¶ 9} The court imposed a two-year community control, but stated that "if the defendant is brought back in on the community control violation, the Court can put the defendant on five years of community control." While the city recommended a fine of $775,000 with 95% mitigated upon compliance, the court imposed $775,000, subject to a motion to reduce the fine upon compliance. The court, however, stayed the fine for six months, until January 27, 2017, and indicated it would allow an extension of time if appellant made progress.

{¶ 10} As pertinent to appellant's first assignment of error regarding appellant's no-contest plea, the transcript reflects the following exchange between the court and appellant's representative Varcelli:

> THE COURT: Mr. Varcelli, do you understand those rights and knowingly and willingly give them up?
> MR. VARCELLI: Yes, Your Honor.
> THE COURT: Okay. I'll accept the plea. * * *

{¶ 11} At the conclusion of the hearing, counsel for appellant specifically confirmed with the court that appellant's plea was a no-contest plea.[1]

{¶ 12} After the hearing, the court issued a form judgment entry hearing on the same day, imposing a fine of $775,000 and the judgment entry contained a notation that "Defendant can file a motion to modify community control financial sanction upon full compliance." The judgment also reflects a two-year term of community control.

{¶ 13} Subsequently, on October 20, 2016, this court released a decision in an unrelated case, *Cleveland v. United States Bank, N.A.*, 2016-Ohio-7402, 72 N.E.3d 1123 (8th Dist.). This court reversed a judgment of the housing court imposing community control sanctions on the ground that the form judgment entry lacked certain requisite elements such as the specific code section the defendant violated, the terms of community control, or the consequences of a violation of the

---

[1] The transcript reflects the following:
> [DEFENSE COUNSEL]: * * * Our intention was to plead no contest.
> THE COURT: Yes. It's a plea of no contest, finding of guilty.
> [DEFENSE COUNSEL]: I just wanted to confirm that.

community control. This court held that the deficiencies of the judgment entry mean the trial court did not properly convict the defendant and the community control sanctions were void. *Id.* at ¶ 3.

{¶ 14} Accordingly, on March 2, 2017, the trial court sua sponte journalized a judgment entry in this case, stating that its July 27, 2016 form judgment entry failed to comply with statutory requirements and was deficient pursuant to *United States Bank*. The court set the matter for resentencing on March 14, 2017.

{¶ 15} On March 14, 2017, the court held a hearing. Housing Court Specialist Jerry Krakowski, who was assigned as community control officer in this case, reported that progress was being made on the property. The city agreed that appellant was working toward a resolution of the matter, and the court imposed two years of community control and imposed a fine of $77,500, 10% of the original fine of $775,000, to be paid under a payment plan. The court also advised appellant that, once full compliance was achieved, appellant could ask the court to suspend the balance of the fine. The court agreed to allow appellant pay $50 per month for six months, but the amount would be increased to $2,000 after six months, and appellant was to pay the balance of the imposed fine of $77,500 if it was not in full compliance at the end of its community control.

{¶ 16} The court furthermore explained the terms of appellant's community control: appellant was to keep all of its properties in compliance with the city's code and in good repair. The court specifically required appellant to abide by Cleveland Housing Court Loc.R. 2.18, which requires the offender to "keep properties in good

repair" and "to abide by all laws," which includes "abiding by all city code requirements."

{¶ 17} The court advised appellant that if it were to violate its community control, the court can impose a longer period up to five years, increase a more restrictive community control terms, or impose a more severe financial sanction up to $795,000.

{¶ 18} In a judgment entry dated March 31, 2017, and journalized on April 4, 2017, the court imposed a fine of $77,500 — a significant decrease from the original sanction of $775,000 — and a two-year term of community control sanctions. The fine was to be paid at the rate of $50 per month for the first six months beginning May 15, 2017, after which monthly payments would increase to $2,000. Appellant's community control obligations included: abide by the law (R.C. 2929.25(C)); comply with the housing court's general probation requirements set forth in Loc.R. 2.18, including keeping all properties appellant owned in the city in good repair and in compliance with the city's code; and report to and cooperate with its community control officer. If appellant violates community control, the court may impose a longer period of community control up to five years in total or impose more restrictive community control sanctions, including financial sanctions.

{¶ 19} On November 3, 2017, appellant filed a motion to extend the period of $50 monthly payment for additional six months. The court granted the request and extended the $50 payment schedule to May 15, 2018.

## 2. The City's Motion Alleging Violation of Community Control Sanctions

{¶ 20} On February 26, 2018, the city filed a motion for probation violation, alleging appellant violated its community control sanctions in that, after being found guilty in July 2016 and placed on community control, appellant had yet to obtain the certificate of occupancy but it continued to operate its business.

{¶ 21} Appellant filed a response to the city's motion, detailing its efforts to secure a certificate of occupancy. Appellant first submitted its application on November 2, 2016, and then resubmitted the application on January 25, 2017, May 3, 2017, and November 2, 2017, but each time the application was found to be noncomplying.

{¶ 22} The main issue of nonconformance involved the dirt pile located within 500 feet from a residential district. Appellant had intended to remove the pile, but learned that the cost of removal would be around $700,000. Due to the exorbitant cost, appellant decided to seek a variance instead. Its resubmission of the application on November 2, 2016, included the retention of the dirt pile; appellant expected to receive a nonconformance for the application and planned to appeal to the Board of Zoning Appeals for a variance. Appellant stated that it had taken numerous steps — submitting four applications — to secure a certificate of occupancy since its no-contest plea, but the process has been delayed by the unique nature of its business, the difficulty of securing a certificate of occupancy while

operating the business, and the lengthy review process at the Building and Housing Department.

{¶ 23} On April 26, 2018, the trial court held a hearing on the matter. The issue at the hearing was whether appellant continued to operate its business despite not having a certificate of occupancy. The transcript of the hearing was not part of the record on appeal. According to the judgment entry issued by the trial court after the hearing, Thomas Vanover, the City's Chief Building Official, testified that he visited the site on April 5, 2018, and observed large mounds of dirt, brick, and asphalt on the property. He also saw machines used to sort and process the materials on the site, although he did not see those machines in operation.

{¶ 24} Varcelli, appellant's Vice President, testified that appellant had applied four times for a certificate of occupancy and its engineers and consultants continued to revise the applications to meet the city's code. Varcelli acknowledged that appellant's trucks were still bringing in new loads of dirt, but the trucks were also moving dirt out.

{¶ 25} Based on the evidence presented, the court found the city proved appellant violated its community control sanctions. The court modified its financial sanctions by increasing the total fine to $400,000, which equaled the maximum fine of $5,000 for 80 counts of violation. The court also extended the community control to April 30, 2020. Appellant asked for the court's permission to maintain its operation while it continued its efforts to secure the certificate of occupancy. The

court denied the request, on the ground that the court did not have the authority to permit appellant to operate without the requite certificate.

{¶ 26} In a decision dated on April 30, 2018, the court set forth the terms of appellant's community control, which included compliance with the local codes and keep its property in good repair in accordance with Loc.R. 2.18. In addition, the court ordered appellant to cease all business operations at the subject property until it obtained a certificate of occupancy. Appellant was to pay a financial sanction of $400,000 as part of its community control, at a rate of $2,000 per month for May, June, and July 2018, and at a rate of $20,000 beginning on August 15, 2018. Appellant was also informed that a failure to comply with the terms of community control may result in a longer period of community control up to five years and more restrictive community control sanctions, including increased financial sanctions up to $775,000. The court also extended the community control term to April 30, 2020.

### 3. First Appeal and May 29, 2018 Status Hearing

{¶ 27} On May 29, 2018, appellant appealed the trial court's decision to this court. Two days after appellant filed the appeal, on May 31, 2018, the trial court held a status hearing on the matter. Chief Housing Court Specialist and appellant's community control officer Jerry Krakowski reported appellant had complied with the requirements of its community control sanctions since April 30 2018, and it had also been paying the financial sanction $2,000 per month timely. Krakowski also

reported the activities on the property were minimal and those activities only involved taking the material out of the property.

{¶ 28} Appellant's counsel reported to the court that appellant had ceased operation bringing materials to the site since April 26, 2018, and no more materials were brought to the property. Appellant, however, received notification from the city's zoning administrator the day before hearing that the city found noncompliance regarding the accumulation of dirt and other materials and the parking situation, which appellant expected, but the city now also required a masonry fence around the property because it considered the site a "junk yard." Appellant's counsel indicated that appellant was aware that the property was an issue for the community and it has been actively pursuing business opportunities to allow it to give away the materials that have been accumulated on the site. Counsel asked the court to revisit the schedule for the payment of the fine imposed on April 26, 2018.

{¶ 29} The trial court indicated that it would be willing to revisit the fine issue, but it currently did not have jurisdiction to take any action due to the pending appeal. The trial court indicated that if it had jurisdiction, it "would consider that ProTerra's actions of ceasing active business operation is enough of a mitigating factor and [it] would reduce the fine to $100.00 per month."[2] The court explained

---

[2] The transcript reflects the following statement of the court to appellant's counsel regarding the appeal:

that the payment schedule imposed on April 26, 2018, was due to the fact that appellant continued to operate and bring in more dirt to the site. At the conclusion of the hearing, appellant's counsel confirmed with the court that, in the event appellant dismissed the appeal and filed a motion to modify, the fine of $100 per month would remain "until we do something wrong or until something goes right."

### 4. Appellant's Motion to Modify the Financial Sanctions

{¶ 30} Based on the trial court's representation at the May 31, 2018 hearing, appellant dismissed its appeal pending before this court on June 7, 2018, and on the same day filed a motion to modify its community control financial sanction, seeking a modification of the fine payment to $100 per month.

{¶ 31} On June 15, 2018, the city filed an opposition to appellant's motion, on the ground that, although appellant ceased bringing in any new material to the property, it had not removed the unauthorized material at the site. The city maintained that under the terms of its community control, the accumulated

---

You filed an appeal. Your clients certainly have the right to go through with an appeal. I'm not trying to talk you out of an appeal. But if you find that it would be more productive in dismissing it and filing a Motion to Modify[,] [u]der the circumstances, I would be inclined to take your clients having ceased operations in essence as a significant mitigating factor and would reduce it to $100.00 per month. All of the conditions remaining the same. So it's up to you.

* * *

So the choice is yours. Like I said, if you want to proceed with your appeal that's your right. It doesn't in any way have me feel one way or the other about it.

materials on the site must be removed until appellant received a certificate of occupancy. The city argued that any modification of the payment amount must be premised on quantifiable removal of the dirt until either the accumulation of dirt was removed or a certificate of occupancy was obtained.

{¶ 32} On June 25, 2018, the court issued a judgment entry. The court noted that at the status hearing on May 31, 2018, the court explained it did not have jurisdiction to consider appellant's motion to modify during the pendency of appellant's appeal but stated that, if it had jurisdiction, it would maintain the total fine of $400,000 but allow appellant to pay $100 per month because appellant had ceased bringing in additional materials.

{¶ 33} In the judgment entry, the court granted appellant's motion to modify the community control sanctions, reducing the fine to $100 monthly payments on the ground that appellant had ceased bringing in new material to its facility. The judgment entry stated that all other terms of appellant's community control sanctions would remain unchanged. Despite the city's argument, the judgment entry did not reflect an express requirement for appellant to remove the dirt and related materials from the site as part of its community control.

### 5. Appellant's Motion to Convert Financial Sanctions to Community Work Service

{¶ 34} On May 21, 2019, appellant filed a motion to convert the remaining financial sanctions to community work service. Appellant stated that it has been making the required monthly payments toward its fine since its no-contest plea in

July 2016, has ceased bringing materials into the property, and has been making efforts towards securing a certificate of occupancy. It stated that, because of its inability to operate the site, it had limited resources to pay the fine of $400,000. Appellant asked the court to convert the remaining fine to community service, specifically, to clean up an unrelated site at 14001 Aspinwall Avenue in Cleveland. It submitted an estimate for the value of the proposed work at $127,800.

{¶ 35} The city opposed appellant's motion on the ground that appellant had yet to remove the unauthorized material from its property or obtain the required certificate. The city reported that two representatives from the city's buildings housing department inspected appellant's property on May 23, 2019, and observed the level of the dirt pile to be the same as in 2017 and 2018.

{¶ 36} On July 3, 2019, the court held a hearing on appellant's motion. The record before us does not include a transcript for this hearing. In the judgment entry issued on July 3, 2019, the court granted appellant's motion and allowed appellant to be credited for $127,000 toward the balance of the fine ($396,905) and would suspend the outstanding fine of $269.105, upon the completion of the proposed work. Again, despite the city's argument, the court's judgment did not reflect a requirement for appellant to remove the existing dirt from the property.

{¶ 37} The judgment contained a notation that at the July 3, 2019 hearing, the city raised several issues regarding the conditions of the property and, as result

the court scheduled a site visit on July 22, 2019.[3]  No details of the site visit were reflected in the docket but according to appellant, those present discussed appellant's need for a temporary certificate to process and screen the dirt in order to expedite its removal.

{¶ 38} The docket reflects that, subsequent to the site visit, on August 29, 2019, appellant filed a notice of its application for a temporary certificate of occupancy, which sought permission to screen the dirt mound on the site.

### 6.  Second Probation Violation Hearing

{¶ 39} The docket next reflects that, on January 31, 2020, the court issued a notice of hearing for appellant's violation of community control sanctions upon receiving a communication from Housing Specialist Geoffrey Englebrecht, the new community control officer assigned to this case in January 2020.   The communication, attached to the court's notice, indicated two violations: (1) failure to pay the $100 monthly payment in September, October, and November 2019 as of January 31, 2020, and (2) "[f]ailure to maintain property in compliance with applicable ordinances and codes" by allowing "[c]onditions [to] remain for which the property was originally brought before the Court."  Englebrecht stated, "I have personally observed the above conditions and/or conduct in violation of the

---

[3] The transcript of a subsequent hearing reveals that those who visited the site on July 22, 2019, included the trial judge who presided over this matter at the time, Housing Court Chief Specialist Krakowski, the parties and their counsel, the City Inspector, and a city councilman.

Community Control Sanctions imposed by this Court, and I respectfully request that the Court schedule a violation hearing for the named offender."

{¶ 40} On February 26, 2020, a probation violation hearing, presided over by a new judge recently assigned to the case, took place. Englebrecht reported that appellant missed several payments but acknowledged that, before the hearing, appellant's counsel showed him two receipts of the payments, dated February 3, and 7, 2020, respectively. Englebrecht, however, stated that the motion for community control violation was not just based on the missed payments but on the condition of the site itself — he found that there was a "lack of visual progress of the property." He stated that he lived close to the site and drove by the site frequently. He found that "visually, [the site] hadn't changed for years." Englebrecht acknowledged that appellant had been submitting "load receipts" to show the loads of dirt that have been removed from the property.

{¶ 41} Tom Vanover, the Commissioner of Code Enforcement and city's Chief Building Officer, added that the accumulation included dirt, brick, asphalt, concrete, and organic materials. While appellant had been required to obtain a certificate of occupancy as part of its community control, Commissioner Vanover acknowledged that appellant "cannot legally do what [it is] doing where [it is] doing it. [It] never could, and [it] will never be able to." He also stated that, while appellant had submitted applications multiple times, it would not be able to operate the site under the zoning code without a variance and, in his experience, "that variance will never be granted."

{¶ 42} Appellant's counsel reported that appellant had been submitting weekly load receipts regarding the removal of the dirt to Krakowski and, pursuant to the discussion at the site visit, appellant subsequently filed an application for a permit to screen and process the dirt, which would significantly accelerate its removal from the site. Vanover reported that appellant has just been granted a 180-day temporary permit.

{¶ 43} Michael Zychowski, appellant's owner, acknowledged the company had brought dirt and other materials to the site over several years. He stated that under the watch of prior community control officer Krakowski, the company had been allowed to continue to operate while working toward obtaining a certificate of occupancy. The company would now focus on removing the material from the site by screening it and giving the dirt away for free to construction projects in need of backfill material.

{¶ 44} The trial court expressed its dismay and frustration at appellant's slow progress removing the accumulation of the dirt from the site and also at how the court had been handling the matter previously. Immediately before finding appellant in violation of community control, it inquired about where appellant was removing the debris from the Aspinwall site. When appellant's counsel explained that the debris from Aspinwall, which involved a demolition, were taken to landfills, the court stated the following:

> I'm just amazed at how the Court doesn't ask for receipts of [dirt removed] * * * how do you put somebody on probation, ask them to clean up a site that's under the Court's jurisdiction * * * and not have

a tracking mechanism to make sure they're not dumping at the other person's site? So guess what I'm about to do? So I find that you are in violation of your probation.

{¶ 45} After the hearing, the court issued a judgment entry. The court found appellant violated its community control, reinstated $100,000 of the original fine, and extended the term of community control to April 30, 2022. Appellant timely appealed from the judgment.

**B. Appeal**

{¶ 46} On appeal, appellant claims that its no-contest plea was invalid, the trial court's judgment entry reinstating a fine of $100,000 was void for failing to comply with Crim.R. 32(C) and R.C. 2929.25, and the court abused its discretion in finding appellant in violation of its community control and imposed an excessive fine of $100,000. As we explain in the following, appellant's claim regarding its no-contest plea is barred by res judicata but the court erred in finding appellant violated its community control. Appellant's claim regarding the validity of the judgment entry is moot.

**1. No-Contest Plea**

{¶ 47} Under the first assignment of error, appellant claims that its plea of no contest was invalid because at the July 27, 2016 plea hearing it did not formally enter a plea of no contest on the record and also because the trial court failed to comply with Crim.R. 11.

{¶ 48} Appellant's claim regarding his plea is barred by res judicata. Under the doctrine of res judicata, a final judgment of conviction bars the defendant from

"raising and litigating in any proceeding, except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised." *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Appellant did not appeal from the trial court's judgment finding it guilty of a violation of the zoning code based on its no-contest plea, and therefore, any claim regarding the validity of the plea is now barred. The first assignment of error is overruled.

### 2. Finding of Violation of Community Control on February 26, 2020

{¶ 49} Under the third assignment of error, appellant claims the trial court abused its discretion in finding it in violation of its community control and imposed an excessive fine of $100,000.

{¶ 50} Community control violations are not criminal proceedings and the prosecution need not prove a violation beyond a reasonable doubt. *State v. Mingua*, 42 Ohio App.2d 35, 40, 327 N.E.2d 791 (10th Dist.1974). Instead, in such a proceeding, the state is only required to present substantial proof that the defendant has violated the terms of probation. *State v. Motz*, 2020-Ohio-4356, 158 N.E.3d 641, ¶ 26 (12th Dist.); *State v. McCord*, 8th Dist. Cuyahoga No. 92268, 2009-Ohio-2493, ¶ 4; and *State v. Hylton*, 75 Ohio App.3d 778, 600 N.E.2d 821 (4th Dist.1991). Once a violation of community control is proven, we review the decision to impose a portion of the suspended sentence for an abuse of discretion. *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 13.

{¶ 51} Here, the notice of community control violation issued by the trial court on January 31, 2020, cited appellant for a violation of its community control on two grounds: failure to make the $100 payments for September, October, and November 2019 and failure to maintain its property in compliance with the zoning code by allowing "conditions [to] remain for which the property was originally brought before the Court."

{¶ 52} The evidence shows the missed payments were made before the violation hearing and the transcript of the hearing reflects the trial court did not find appellant violated its community control on that ground. Rather, our reading of the transcript reflects the trial court found appellant in violation because it was dismayed at the slow progress of the cleanup of the site and frustrated that the court previously had not required appellant to show proof of its efforts in removing the dirt from the site.

{¶ 53} While the trial court's frustration is understandable, the record indicates the terms of appellant's community control have always been for appellant to obtain a certificate of occupancy and appellant made ongoing efforts to obtain the certificate. After its initial application on November 2, 2016, was rejected, appellant sought clarification from the Department of Building and Housing and resubmitted the application in January 2017. Thereafter, appellant resubmitted the application twice, in May 2017 and November 2017. Appellant ultimately appealed the matter to the Board of Zoning Appeals, the common pleas court, and this court. After the

site visit on July 22, 2019, appellant applied for a temporary permit to allow it to process the material on the site so that it could accelerate the cleanup process.

{¶ 54} It was not until the February 26, 2020 hearing that appellant learned from its new community control officer that it would never be able to obtain a certificate of occupancy to operate its business at the site without a variance, and a variance "will never be granted."

{¶ 55} The record also reflects that, after appellant ceased bringing in more material to the site in April 2018, the trial court appeared to be satisfied with the progress made by appellant. It reduced the financial sanctions to a $100 monthly payment, rejecting the city's argument that appellant was not in compliance with its community control for failing to remove the dirt from the site. The trial court subsequently allowed appellant to convert a portion of the financial sanctions to community work cleaning up a demolition site, despite the city's objection on the same ground. At the February 26, 2020 hearing, for the first time, the trial court inquired about appellant's progress removing the accumulated dirt from the site and expressed its dissatisfaction at the lack of progress.

{¶ 56} Our review of the record therefore shows appellant was never on notice that removing the dirt from the site was part of its community control. Although appellant was required to "keep properties in good repair" and to "abide by all laws," these general terms did not put appellant on notice that the terms of its community control require it to remove the dirt from the site on a certain schedule

or by a certain deadline. As such, there is no proof, substantial or otherwise, that appellant violated the terms of its community control.

{¶ 57} We recognize the potential health and safety hazard posed by appellant's unauthorized business operation in the neighborhood and understand the frustration of the housing court at the slow progress made by appellant in abating the problem. However, the court still must act within the boundaries of due process. With reluctance, we reach the conclusion that the judgment of the housing court must be reversed.

{¶ 58} The third assignment is sustained in part. The remaining claim under that assignment of error regarding the excessiveness of the reinstated fine, as well as the second assignment, is moot.

{¶ 59} Judgment reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, A.J., and
LARRY A. JONES, SR., J., CONCUR