[Cite as *Cleveland v. S.W. Invests., L.L.C.*, 2024-Ohio-1271.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                     :

    Plaintiff-Appellee,           :                Nos. 112485, 112486,
                                         and 112683

    v.                            :

SOUTHWEST INVESTMENTS LLC,              :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 4, 2024

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2021-CRB-004651

---

### *Appearances:*

Mark Griffin, Director of Law, and William H. Armstrong, Jr., Assistant Director of Law, *for appellee*.

Cavitch, Familo & Durkin Co. LPA and Bradley Hull IV, *for appellant*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendant-appellant, Southwest Investments LLC ("Southwest"), appeals from several judgments of the Cleveland Municipal Court following the court's finding that Southwest violated its community-control sanctions. After a thorough review of the record and law, this court affirms.

# I. Factual and Procedural History

{¶ 2} On May 10, 2021, the city of Cleveland ("Cleveland") filed a complaint against Southwest alleging violations of Cleveland Codified Ordinances ("C.C.O.") 3103.25(e), failure to comply with an order of the city's department of building & housing ("DBH"). Southwest's statutory agent and sole member, Anthony Dattilo ("Dattilo"), appeared as the representative for Southwest throughout the pendency of this matter.

{¶ 3} The failure-to-comply complaint stems from a notice generated on August 7, 2019, by DBH, providing that the property owned by Southwest located at 6215 Gertrude Avenue in Cleveland was in violation of C.C.O. 3105.01(a) and 3105.25 for installing a porch roof without a permit. C.C.O. 3103.99(a) provides that each separate day out of compliance is a separate first-degree misdemeanor.

{¶ 4} Southwest did not appeal an earlier building code case filed against Southwest, 2019-CRB-010919, but it is discussed briefly to the extent it is discussed in the record of the instant matter. It appears that due to a clerical error by Cleveland, Southwest was named as the defendant in a building code violation complaint associated with a property that Southwest and Dattilo did not own, and indeed had never owned. Southwest allegedly never received notice of this action and never appeared. As a result, Southwest was fined a significant sum that was eventually reduced to a judgment lien. Only after this judgment lien was filed did Southwest and Dattilo discover the pending case. Southwest and Dattilo underwent

a lengthy process attempting to get the 2019 case dismissed and the associated lien released and removed.

{¶ 5} Turning back to the case from which this appeal was taken, the trial court held a plea hearing on July 13, 2022, at which Southwest entered a no-contest plea to ten counts of violating C.C.O. 3103.25(e). The court found it guilty and nolled the remaining 156 counts. Sentencing was continued pending the preparation of a presentence-investigation report and the order pertinently noted that "[Southwest] is ordered to not sale [sic], order [sic] or gift property while [the] case is pending."

{¶ 6} The trial court sentenced Southwest on October 12, 2022. It was noted during this hearing that the work was complete, and the permits had been requested, meaning Southwest had remedied all violations that led to the complaint. The court advised defendant that his total penalty could have been a fine of $50,000, five years of community-control sanctions, and court costs. Relevant to this appeal, the court suspended the $50,000 fine pending successful completion of two-years of community-control sanctions and specifically ordered that Southwest was not to "sale, gift or transfer the properties it owns within the City of Cleveland while on community control without approval of the Court." The court advised numerous times that "all of your properties owned in the City of Cleveland [are] under the jurisdiction of this court. That is so that you don't get any more violations." (Tr. 10/12/2022, 34.) The accompanying journal entry provided that "No Prohibition Order will be filed at this time provided Defendant remains in compliance with the orders of the Court." The journal entry also referenced

Exhibit A, which designated the six properties that Southwest owned in Cleveland. The entry also noted that if Southwest was found in violation of community control, the court may (1) impose further community-control sanctions up to five years and; (2) impose more restrictive community-control sanctions, including increased financial sanctions up to $50,000.

{¶ 7} On November 15, 2022, the court held a community control status hearing and reviewed Southwest's compliance with community control. At the end of the hearing, Southwest's counsel asked if the order not to sell, gift, or transfer any of the properties could be lifted for the five properties that were not the subject of the initial violation, which the court declined. The accompanying journal entry again provided that "[Southwest and counsel] were again informed on November 15, 2022, not to sale, gift or transfer the properties it owns within the City of Cleveland while on community control without approval of the Court. No Prohibition Order will be filed at this time provided Defendant remains in compliance with the orders of this Court." The entry again referenced Exhibit A, enumerating the six properties that Southwest owned in Cleveland.

{¶ 8} On December 8, 2022, Southwest sold one of the properties referenced in Exhibit A, located at 3636 East 65th Street. The housing court specialist assigned to this matter, Antonio McMullen ("McMullen"), wrote in his report that this property had been sold "without notifying Deputy Chief housing court Specialist McMullen, and/or approval from the Cleveland Housing Court." The report further

noted that another one of Southwest's properties located at 3691 East 63rd Street was transferred to another LLC that was allegedly associated with Dattilo.

{¶ 9} On January 31, 2023, the court held an in-person status hearing at the request of Southwest's counsel. During this hearing, McMullen testified regarding the sold and transferred properties. Dattilo was sworn in to testify on Southwest's behalf and indicated that he was the sole member of Southwest. Dattilo admitted that he sold and transferred the two properties at issue. Dattilo indicated that he understood that Southwest was not to sell, gift, or transfer any of the properties and admitted that he had received all prior orders forbidding Southwest from doing so. The court found Southwest in violation of community control based on the two properties that were sold and transferred in violation of the court's order. The court ordered that Southwest pay $25,000 with the remaining $25,000 stayed so long as Southwest remained in compliance with all community-control sanctions and did not sell, gift, or transfer any of the other properties unless approved by the court. The court ordered that Southwest pay $2,000 monthly beginning on February 20, 2023, until the $25,000 fine was paid, and noted that failure to make these payments would potentially subject Southwest to additional community-control sanctions violations. The court also advised that a prohibition order would be filed with the Cuyahoga County Office of Fiscal Officer and that Southwest was responsible for all filing costs of the order. A copy of the prohibition order was filed in the trial court on February 8, 2023.

{¶ 10} Southwest filed two notices of appeal on March 8, 2023, attaching both the order finding Southwest in violation of community control and the prohibition order dated February 8, 2023.

{¶ 11} While the first two appeals were pending, yet another community-control sanctions violation hearing was held on April 5, 2023, because Southwest had not made any payments towards the $25,000 fine imposed at the prior hearing. Counsel for Southwest explained that Southwest had not made any payments because Southwest was exercising its right to appeal the fine and noted that paying the fine in full would render the instant appeal moot. Southwest made an oral motion to stay the fine, which the trial court denied. The court did not find Southwest in violation of community control, but warned that it would generate a new payment schedule for the $25,000 fine. The journal entry following this hearing provided that "[a]ll prior orders to remain in full force and effect. [Southwest's] motion to stay fine denied. Defendant ordered to pay $6,000 by April 20, 2023, and to resume $2,000 per mo[nth] p[a]ym[en]t May 20, 2023." Southwest filed its third notice of appeal from this journal entry.

{¶ 12} This court consolidated all three of Southwest's appeals into the instant matter for briefing, and Southwest assigned the following three errors for our review:

> I. The trial court committed an abuse of discretion in imposing community control sanctions upon defendant-appellant including prohibiting defendant-appellant from selling, conveying, gifting and transferring any properties it owned in the City of Cleveland, Ohio, and then imposing a prohibition order.

II. The trial court imposed an unlawful fine on defendant-appellant when it found that defendant-appellant had violated its order.

III. The trial court wrongfully refused to impose a suspension of execution of sentence after a judgment of conviction upon defendant-appellant.

## II. Law and Analysis

### A. Imposition of Community-Control Sanctions

{¶ 13} In its first assignment of error, Southwest argues that the trial court erred in imposing a community-control sanction forbidding Southwest from selling, conveying, gifting, or transferring any properties that it owned and then imposing a prohibition order. Southwest advances two arguments: 1) that the court abused its discretion in fashioning a community-control sanction that was overly broad and impinged upon Southwest's liberty and 2) that Southwest's due process rights under the United States and Ohio Constitutions were violated by the trial court's community-control sanctions including the directive to not sell, gift, or transfer the property and that the property be kept in a neat and clean condition.

{¶ 14} Res judicata bars a defendant from appealing a final judgment of conviction when the defendant, who was represented by counsel, failed to raise or litigate "any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, * * * or on appeal from that judgment." *State v. Szefcyk*, 77 Ohio St.3d 93, 96, 671 N.E.2d 233 (1996), citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. The Ohio Supreme Court recently clarified its position on res judicata as it applies to any

party's failure to directly appeal a sentence in *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776. "[S]entences based on an error are voidable, if the court imposing the sentence has jurisdiction over the case and the defendant[.] A sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Id.* at ¶ 27. "[U]nless it is vacated on appeal, a voidable judgment has the force of a valid legal judgment, regardless of whether it is right or wrong." *Id.* at ¶ 17. "The failure to timely — at the earliest available opportunity — assert an error in a voidable judgment, even if that error is constitutional in nature, amounts to the forfeiture of any objection." *Id.*

{¶ 15} The journal entry setting forth the terms of Southwest's community-control sanctions was a final, appealable order from which Southwest could have, and did not, directly appeal. A judgment of conviction is final when the order sets forth (1) the fact of the conviction; (2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court. *State v. Baker*, 119 Ohio St.3d 197, 893 N.E.2d 163, syllabus, *as modified by State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, syllabus. Southwest did not file a direct appeal from the trial court's final, appealable order setting forth the conditions of community control, including the sanction barring Southwest from selling, gifting, or transferring its properties and the warning that a prohibition order would not be filed unless and until a violation of this order occurred. *See, e.g., Cleveland v. Durham Properties Ltd.*, 8th Dist. Cuyahoga No. 100754, 2014-Ohio-4378, ¶ 10, citing *Cleveland Mun. Court Criminal Div. v. Anthony*, 8th Dist. Cuyahoga No.

97786, 2012-Ohio-4055, ¶ 21. Southwest did not raise any arguments or objections to the community-control sanctions in the trial court. Even now, Southwest does not advance any arguments indicating that the trial court's judgment was void rather than voidable, which would allow this court to review the trial court's judgment despite Southwest's failure to directly appeal the sentence. Nonetheless, upon review, the sentencing court did not lack subject matter or personal jurisdiction over Southwest at the time that the sentence was issued; the judgment is not void.

{¶ 16} Southwest's first assignment of error is barred by res judicata; it is overruled.

### B. The $25,000 Fine

{¶ 17} Southwest's second assignment of error contends that the $25,000 fine imposed because of Southwest's community-control violation was excessive under the Eighth Amendment to the U.S. Constitution's prohibition against excessive fines. Southwest argues that "at worst, one conveyance did not put [Southwest's] half-interest beyond the control of [Southwest], and the other conveyance was to a legitimate homeowner, not an absentee [l]andlord as the [c]ourt assumed[.]" Southwest further argues that the $25,000 fine "exceeded the value of a number of [Southwest's] rental houses in Cleveland, Ohio, [and] started off at 50% of the maximum fine for the underlying conviction on all counts (despite this being, at worst, a single violation of one — thus, fewer than 10%, of all community control conditions.)" Southwest argues that because of all of the above, the $25,000 fine was punitive in nature.

{¶ 18} In a community-control violation proceeding, the prosecution is only required to present "substantial proof" that the defendant has violated the terms of community control. *Cleveland v. ProTerra, Inc.*, 8th Dist. Cuyahoga No. 109696, 2021-Ohio-1086, ¶ 50. Once a violation of community control is proven, the decision to impose a portion of the suspended sentence is reviewed for an abuse of discretion. *Id.,* citing *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 13. A court has wide latitude in sentencing defendants for community-control violations. *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 20. Southwest does not dispute the trial court's finding that it violated community control. Instead, Southwest disputes the portion of the suspended sentence that the trial court imposed as excessive and punitive.

{¶ 19} R.C. 2929.25(A)(1)(a) allows a sentencing court to "directly impose a sentence that consists of one or more community control sanctions authorized by section * * * 2929.28 (financial sanctions) of the Revised Code." Since Southwest is an organization, R.C. 2929.31(A)(8) provides for an increased financial penalty of $5,000 for each first-degree misdemeanor. The notice provision of R.C. 2929.25(A)(3) requires that notice of the possible consequences of a community-control-sanctions violation be given to the defendant at the sentencing where community control was imposed. *State v. Jordan*, 8th Dist. Cuyahoga No. 80851, 2002-Ohio-5086, ¶ 38. After pleading no contest, Southwest was found guilty of ten first-degree misdemeanors and duly advised that it was subject to a fine of $50,000 that would be suspended so long as Southwest did not violate

community control.  Based on R.C. 2929.31(A)(8), this fine was within the statutory range and the trial court was empowered to impose this fine directly at sentencing, but instead chose to suspend it and reserve all or some of the fine in the event that Southwest violated community control.

{¶ 20} Southwest argues that the fine was inappropriate because "in cases involving building, housing, or health code violations, the primary goal is to bring the property into compliance, rather than punish the defendant for the misconduct." *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, 73 N.E.3d 889, ¶ 19 (8th Dist.), citing *Cleveland v. Go Invest Wisely, L.L.C.*, 8th Dist. Cuyahoga Nos. 95172, 95173, 95174, 95175, 95176, and 95177, 2011-Ohio-3047, citing *Lakewood v. Krebs*, 150 Ohio Misc.2d 1, 2008-Ohio-7083, 901 N.E.2d 885, ¶ 19 (M.C.). Nonetheless, *Schornstein* recognizes that

> the housing court is vested with broad authority to fashion appropriate punishment to bring about compliance.  Unlike an individual defendant, who could be confined as a punishment for a lack of compliance, an organization defendant, such as the landlord here, cannot be incarcerated.  The housing court is empowered to tailor the amount of financial sanctions to compel compliance from an organizational entity.

*Schornstein* at *id.*

{¶ 21} In *Schornstein*, this court reversed the imposition of a $230,000 fine for a community-control violation in a housing code violation case where the entry of conviction placed the organizational defendant on community control and imposed a fine of $2,000 with $1,800 suspended.  *Id.* at ¶ 5.  The instant matter is distinguishable because the *Schornstein* Court found that while the trial court

checked the box indicating that community-control warnings were given, "there was no enumeration of the terms of the community control, or the consequences of a violation of the terms. There was also no warning of a potential maximum fine of $5,000 per count for a business entity, which would total $230,000[.]" *Id.* at ¶ 17. Here, the transcript and entry of conviction both make the possible fine abundantly clear to Southwest, and Southwest acknowledged as much during the community-control-violation hearing.

{¶ 22} "For a building code violation, other than for a minor misdemeanor, the penalties set forth by statute or ordinance may include fines, jail time, and community control sanctions for a maximum of five years." *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, 133 N.E.3d 580, ¶ 10 (8th Dist.), citing *N. Olmsted v. Rock*, 8th Dist. Cuyahoga No. 105566, 2018-Ohio-1084, ¶ 32; R.C. 2929.25(A)(1). "The court may impose one or more sanctions, and it may suspend all or some of a sanction." *Id.*, citing *Krebs* at ¶ 14, 15; R.C. 2929.25. Further, if the court finds a defendant in violation of community-control sanctions, it may impose one or more of the following penalties: (1) a longer time under the same community-control sanction so long as the total time does not exceed five years; (2) a more restrictive community-control sanction and/or (3) a combination of community-control sanctions, including a jail term. R.C. 2929.25(D)(2). A financial sanction is clearly authorized as a community-control sanction pursuant to R.C. 2929.25(A)(1)(a), so the court was empowered to order the $25,000 fine.

{¶ 23} Southwest has not pointed to any statutes or case law indicating that the trial court abused its discretion in imposing half of the suspended fine after finding that Southwest violated community control by transferring two properties. Southwest is unable to point to any authority that would allow us to conclude that imposing half of a suspended fine that was within the statutory range, and indeed, below the maximum that could have been imposed, was an abuse of discretion. Also recognized is Southwest's position that the nature of the violation and conviction itself did not warrant a fine of over $25,000, nor should the fine have exceeded the value of the sold house; but, again, Southwest does not point to any case law suggesting that the weight of the fine, even when it is within the statutory range, may be second-guessed by an appeals court.

{¶ 24} At bottom, Southwest was properly informed as to the sanction several times and, indeed, at the hearing, Dattilo admitted that he had received the notice setting forth the sanction. Southwest violated the court's order and is subject to the sanctions that the trial court imposed. Southwest's arguments are acknowledged regarding the value of the home, Southwest and Dattilo's historical lack of building code violations, Southwest's efforts to quickly rectify all the trial court's issues with the property, and the financial losses incurred as a result of the erroneous 2019 case. Unfortunately, none of these negate the fact that Southwest violated the court's community-control order, selling and transferring two of the six properties that Southwest was specifically ordered not to sell or transfer.

{¶ 25} Based on the foregoing, Southwest's second assignment of error is overruled.

## C. Motion to Stay Execution

{¶ 26} In its final assignment of error, Southwest argues that the trial court erred in denying his motion to stay payment of the $25,000 fine so that he could appeal the matter to this court.

{¶ 27} Even though the trial court denied Southwest's motion requesting as much, this court granted the stay of execution on July 12, 2023, pending the resolution of these appeals. Accordingly, there is no further relief that can be offered to Southwest as it relates to this assignment of error, and therefore it is rendered moot.

{¶ 28} Southwest's final assignment of error is overruled as moot.

## III. Conclusion

{¶ 29} Southwest's attempt to contest the specific sanctions of its community control are barred by res judicata. Southwest did not demonstrate that the trial court abused its discretion in imposing half of the suspended financial sanction after finding that Southwest violated its community control, especially when the potential financial sanction was repeated to defendant on numerous occasions before the violation hearing occurred. Finally, Southwest's final assignment of error is moot because no further relief can be afforded to Southwest relief as requested.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)
MARY J. BOYLE, J., CONCURS WITH THE SEPARATE CONCURRING IN JUDGMENT ONLY OPINION

EILEEN T. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 31} Respectfully, I concur in judgment only with the lead opinion's application of the doctrine of res judicata and its determination that Southwest is barred from challenging aspects of the community-control sanctions that were imposed in October 2022.

{¶ 32} As noted by the majority, "It is well settled that the doctrine of res judicata bars claims that were raised or could have been raised on direct appeal." *State v. Brooks*, 8th Dist. Cuyahoga No. 108919, 2020-Ohio-3286, ¶ 10. Traditionally, however, Ohio courts have recognized that res judicata is not to be so rigidly applied "when fairness and justice would not support it." *State ex rel. Estate of Miles v. Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, 903 N.E.2d 311, ¶ 30, citing *Davis v. Wal-Mart Stores, Inc.,* 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001) (res

judicata is not to be so rigidly applied as to defeat the ends of justice or to create an injustice), and *Lucas v. Porter*, 2008 ND 160, 755 N.W.2d 88, 2008 N.D. LEXIS 160, ¶ 22; *see also Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 386, 653 N.E.2d 226 (1995) (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d, Judgments, Section 522, at 786-787 (1994) (Res judicata "'is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'"). "The doctrine should be qualified or rejected when its application would contravene an overriding public policy or result in a manifest injustice." *Jacobs v. Teledyne, Inc.*, 39 Ohio St.3d 168, 171, 529 N.E.2d 1255 (1988), citing *Tipler v. E. I. Du Pont de Nemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971).

{¶ 33} The exceptions to res judicata are limited to exceptional circumstances, however. As recently explained by the Ohio Supreme Court in *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, Slip Opinion No. 2023-Ohio-3097:

> An exception to the res judicata doctrine will not apply when the parties had a full and fair opportunity to be heard on an issue, the trial court issued a final, appealable order determining that issue, the parties failed to pursue a direct appeal or other available remedies to challenge that court's order, and the parties did not commit bad-faith acts during the course of that litigation. * * * As the United States Supreme Court has recognized, simply having a final, unappealed judgment that rests on a wrong or incorrect legal principle is not enough to overcome res judicata — such an exception would swallow the rule. * * * Therefore, we hold that res judicata bars parties from raising claims based on unreasonable or unjust results when the parties had a full and fair opportunity to litigate the issue in the first instance.

*Id*. at ¶ 19.

{¶ 34} In this case, there is no dispute that the trial court had personal and subject-matter jurisdiction over Southwest and the criminal case. In addition, there is no dispute that Southwest (1) had a full and fair opportunity to be heard at the original sentencing hearing, (2) the trial court issued a final, appealable sentencing order, (3) Southwest failed to pursue a direct appeal or other available remedies to challenge that court's order, and (4) the parties did not commit bad-faith acts during the course of the criminal proceedings. Thus, I reluctantly agree with the lead opinion's conclusion that Southwest is procedurally barred from challenging the underlying conditions of its community-control sanctions.

{¶ 35} With that stated, however, I write separately to express my significant concerns with the pattern employed in the housing court, including its use and implementation of overly punitive conditions of community-control sanctions in cases involving corporations or limited liability companies. But for the Ohio Supreme Court's controlling discussion in *AJZ's Hauling*, I would have concluded that this is the exceptional case where the application of res judicata is inconsistent with the principles of fundamental fairness and results in a manifest injustice.

{¶ 36} Under R.C. 2929.21, a trial court enjoys broad discretion in fashioning a sentence for misdemeanors. *Cleveland v. Meehan*, 8th Dist. Cuyahoga No. 100202, 2014-Ohio-2265, ¶ 7. In fashioning a misdemeanor sentence, a trial court must consider the overriding purposes of misdemeanor sentencing "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). To achieve these purposes, "'the sentencing court shall consider

the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public.'" *Cleveland v. Go Invest Wisely, L.L.C.*, 8th Dist. Cuyahoga Nos. 95172, 95173, 95174, 95175, 95176, and 95177, 2011-Ohio-3047, ¶ 8, quoting *State v. Downie*, 183 Ohio App.3d 665, 2009-Ohio-4643, 918 N.E.2d 218, ¶ 45 (7th Dist.), citing *In re Slusser*, 140 Ohio App.3d 480, 487, 748 N.E.2d 105 (3d Dist.2000).

{¶ 37} R.C. 2929.25 governs misdemeanor community-control sanctions. The statute provides a trial court with two options when sentencing a misdemeanor offender: (1) directly impose a sentence that consists of one or more community-control sanctions authorized by R.C. 2929.26, 2929.27, or 2929.28; or (2) impose a jail sentence, suspend some or all of that sentence, and place the offender under a community-control sanction or combination of community-control sanctions authorized under R.C. 2929.26, 2929.27, or 2929.28. R.C. 2929.25(A)(1)(a)-(b).

{¶ 38} Ordinarily, we review the trial court's imposition of community-control sanctions for an abuse of discretion. *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, 133 N.E.3d 580 (8th Dist.), citing *State v. Cooper*, 2016-Ohio-8048, 75 N.E.3d 805, ¶ 31 (8th Dist.), citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 39} Relevant to this appeal, R.C. 2929.27(C) permits the court to "impose any other sanction that is intended to discourage the offender or other persons from

committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." However, in cases involving building or housing code violations, "the primary goal of the court is to correct the violation and bring the property into compliance with all building codes, rather than punish the defendant for misconduct." *Pentagon Realty* at ¶ 9; *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, 73 N.E.3d 889, ¶ 19 (8th Dist.). To achieve that goal, the housing court has broad discretion in "fashioning a sentence to determine the most effective way to bring about compliance." *Id.* at ¶ 10; R.C. 2929.22(A), 2929.25, and 2929.27. And yet, that discretion is not limitless. As stated, community-control conditions must not be overbroad and must be reasonably related to the goals of community control, e.g., rehabilitation of the defendant, administering justice, protection of the community, and ensuring good behavior. *See, e.g., Pentagon Realty* at ¶ 13; *N. Olmsted v. Rock*, 8th Dist. Cuyahoga No. 105566, 2018-Ohio-1084, ¶ 32, 34.

{¶ 40} To determine whether a condition of community control is reasonably related to these goals, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of [community control]." *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990). All three prongs of the *Jones* test must be satisfied for the reviewing court to find

that the trial court did not abuse its discretion. *Solon v. Broderick*, 8th Dist. Cuyahoga No. 107043, 2018-Ohio-4900, ¶ 8.

{¶ 41} Applying the foregoing to the circumstances presented in this case, I begin by emphasizing that at the time of sentencing, the violation underlying the failure-to-comply offenses had been corrected at 6215 Gertrude Avenue. (*See* tr. 5-6, July 13, 2022; tr. 23, Jan. 31, 2023.) Thus, the primary goal of misdemeanor sentencing in the housing court was satisfied in this matter. Turning to the conditions implemented in this case, I recognize that the court is afforded broad discretion under R.C. 2929.27(C). After careful consideration, however, I am unpersuaded by any suggestion that the order prohibiting Southwest from selling or transferring its other properties, which have not been cited by the city, is reasonably related to the goals of community control.

{¶ 42} First, Southwest's sales practices in the city of Cleveland do not share a relationship with the underlying citation or the failure-to-comply offenses charged in this case. Southwest was charged and convicted for failing to remedy a remodeling project that was completed without obtaining a necessary permit in 2019. While the court was permitted to restrict Southwest's actions at 6215 Gertrude Avenue during the term of community control, there is no causal or correlative connection between the facts supporting Southwest's convictions and the significant ban placed on the L.L.C.'s ability to operate its other properties in Cleveland. Nor has the prosecution or the court demonstrated how the lawful sale or transfer of Southwest's other property is reasonably related to the risk of future criminality. In

my view, an order prohibiting an entity from selling or transferring unrelated property that is lawfully owned and in compliance with all pertinent statutes and ordinances boarders on an unlawful taking and is unreasonable under the test implemented in *Jones*.

{¶ 43} Lastly, and perhaps most importantly, the sale and transfer prohibition on Southwest's other properties serves no rehabilitative purpose. Webster's Third New International Dictionary defines "rehabilitation" as "the process of restoring an individual (as a convict, mental patient, or disaster victim) to a useful and constructive place in society through some form of vocational, correctional, or therapeutic retraining or through relief, financial aid, or other reconstructive measure." *Webster's Third New International Dictionary* (1961). Similarly, Black's Law Dictionary, defines "rehabilitation" as "[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." *Black's Law Dictionary* (11th Ed. 2019). I find no articulable basis to conclude that a restriction on Southwest's ability to lawfully sell and transfer property is reasonably related to restoring or otherwise improving Southwest's functionality in the city of Cleveland. The prohibition is not remedial and only served to restrict Southwest's common business practices for an extensive period.

{¶ 44} Beyond the blanket restriction on selling or transferring properties, I am equally concerned with the scope of the court's additional restrictions on the other properties owned by Southwest. In this case, the bulk of the conditions

outlined in the sentencing order did not directly relate to the 6215 Gertrude Avenue property. Rather, they set forth broad restrictions of each of Southwest's properties, including the following obligations:

> e. Defendant is ordered to provide Housing Specialist McMullen with proof of all rental registrations for all rental properties owned within the city of Cleveland.
>
> f. Defendant is ordered to provide Housing Specialist McMullen with proof of its lead safe certifications for all rental properties owned within the city of Cleveland.
>
> g. Defendant is ordered to make all necessary repairs on all properties it owns within the city of Cleveland.
>
> h. Defendant is ordered to ensure that all properties it owns within the city of Cleveland are properly maintained, clean and free of all junk and debris.
>
> i. Defendant is ordered to properly cut and maintain the grass and shrubbery on all of the properties it owns within the city of Cleveland.
>
> j. Defendant is ordered to permit a Housing and Building Inspector access to the property located at 3609 Gertrude Avenue, Cleveland, Ohio 44105 for an exterior inspection of the property including the front porch.
>
> k. Defendant is ordered to repair the window of the property located at 6910 Lansing, Cleveland, Ohio 44105.

**{¶ 45}** I recognize that Housing Div. Loc.R. 2.18 requires offenders to keep all of its properties in good repair, which

> includes the obligation to regularly inspect and maintain the property and the obligation to keep each property clean of debris, secure from entry and free of graffiti. This requirement is in addition to compliance with city or state code requirements for real property.

Based on the express terms of this provision, I cannot say the trial court abused its discretion by subjecting Southwest's other properties to the conditions of its

community-control sanctions. These conditions are supported by the court's local rules. Nevertheless, it is my belief that the local rule and the restrictions imposed against Southwest's other properties are not rehabilitative and serve to preemptively circumvent the procedures and policies in place in the building and housing department for ensuring compliance with the applicable statutes and ordinances. If another property owned by Southwest was in violation of a local building or housing code, the city was entitled to issue a citation and, if necessary, initiate criminal proceedings after affording Southwest due process. Instead, the court held a $50,000 sanction over Southwest's head to monitor properties that were not formally cited or directly related to the failure-to-comply convictions.

{¶ 46} Based on the foregoing, I can only conclude that the conditions relied on at the violation hearing constitute overly broad sanctions that merely serve to punish Southwest by restricting its control and ownership of properties that are in good condition. While I understand the trial court's efforts to protect the community, I do not believe the record suggests that Southwest's statutory agent and sole member, Anthony Dattilo, is the type of landlord the trial court routinely raised concerns about during the pendency of the criminal proceedings. Dattilo is not an out-of-state representative, and there is no evidence to suggest that he had a history of regularly failing to monitor Southwest's properties in Cleveland. To the contrary, the record demonstrates that Dattilo has direct ties to the local community and has one prior citation in the past 20 years. It is worth reiterating that this criminal case did not arise from Southwest's failure to complete necessary repairs at

its property, but from its failure to obtain a permit before it completed a necessary repair. This is a distinction with a significant difference. Under these circumstances, I believe the conditions imposed in this case are unreasonable and may result in unintended consequences in the future.

{¶ 47} Accordingly, had this panel not been precluded from reviewing the contents of the trial court's sentencing order based on Southwest's failure to pursue a direct appeal, I would have found an abuse of discretion and vacated the restrictions pertaining to Southwest's other properties. While I believe a manifest injustice has occurred, I am constrained by the holding in *AJZ's Hauling*.

{¶ 48} Finally, although distinct from the relevant considerations under R.C. 2929.25, I find it necessary to note that the only reason Southwest was previously unable to sell or transfer the properties that are now subject to the court's sentencing order was because the city failed to serve Southwest in accordance with the Ohio Rules of Civil Procedure. The city's clerical error resulted in a judicial lien that prevented Southwest from selling properties before the no contest pleas were entered and the sentencing order was rendered. The disputed lien hampered Southwest's ability to engage in its business practices in the years preceding the failure-to-comply convictions. As defense counsel explained:

> My client has attempted to sell all five properties he owns in Cleveland * * *. The only reason these properties are still in his name at all is because of the inappropriately filed and maintained lien. If that lien would not have been here, he would have been out of Cleveland entirely.

(Tr. 25, Oct. 12, 2022.)

{¶ 49} These uncited properties, which would have been sold prior to October 2022, are now subject to community-control sanctions that once again restrict Southwest's business practices in the city of Cleveland. Based on the current condition of the 6215 Gertrude Avenue property, there is no evidence in this record to suggest that a violation of Southwest's community-control sanctions would have occurred but for the sales restriction on the unrelated properties. And yet, Southwest's decision to exercise its otherwise lawful right to sell and/or transfer its property has been used against it to invoke a suspended sanction that derives from a violation that has long been corrected. The fine, while permissible under the Ohio Revised Code, is substantial and exceeds the value of the property sold in this matter. While I am prohibited from substituting my judgment under the abuse-of-discretion standard, I believe that, at the very most, an extension of Southwest's community-control sanctions would have been more appropriate based on the various factors acknowledged by the lead opinion at paragraph 24.