[Cite as *State v. Colson*, 2025-Ohio-1266.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

    v.                                      :

ANGELO COLSON,                          :

    Defendant-Appellant.             :

No. 114447

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679871-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jamielle Lamson-Buscho, Assistant Prosecuting Attorney, *for appellee.*

Marc L. Stolarsky Law, LLC, and Marc L. Stolarsky, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Angelo Colson ("Colson") appeals the trial court's "decision to revoke his probation . . . based on allegedly improper conduct related to employment verification." For the following reasons, we affirm the trial court's judgment.

## I.   Facts and Procedural History

{¶ 2} On June 16, 2023, Colson pled guilty to attempted felonious assault, endangering children and operating a vehicle while under the influence of alcohol or drugs.   On July 20, 2023, the court sentenced Colson to three years of community-control sanctions ("CCS") in the intensive probation supervision unit, the terms of which included regular drug testing, completion of an anger-management program, driver's license suspension, completion of an inpatient-drug treatment program, attending three "AA/NA meetings per week," obtaining a sponsor and receiving psychological counseling.   The court included in its sentencing journal entry that "violation of the terms and conditions may result in more restrictive sanctions or a prison term of 36 months . . . ."

{¶ 3} On July 27, 2023, Colson was transported to an inpatient-drug treatment facility.  On August 1, 2023, the facility reported Colson absent without leave, and on August 2, 2023, the court issued a capias for his arrest.   For approximately the next year, Colson was "unaccounted for."

{¶ 4} On August 29, 2024, Colson was arrested for obstructing official business and taken into custody because of the outstanding capias.

{¶ 5} On September 19, 2024, the court held a CCS violation hearing at which probation officer Karen Jopek ("Jopek") related that Colson did not comply with any of the terms of his CCS.  Jopek stated that Colson "actually left the program and was walking — he basically was walking down the street . . . .  No contact had been received from . . . Colson since that time until 8/29."  Colson's attorney stated

that "[e]verything [Jopek] said is accurate" and Colson stipulated "to probable cause for being in violation." Colson's attorney also admitted, in mitigation, that Colson was "about 17 months sober. He was working at Popeye's full-time for about three months. He has a place to stay."

{¶ 6} Colson's attorney further stated that Colson was "ready, willing and able to do treatment if [the court] is inclined to do so." The court questioned Jopek about this option and reviewed Colson's history of criminal activity, specifically noting that he has "had many [CCS] repeated escapes." During allocution, Colson stated that he left the treatment facility because he "saw activities going down" and "got ambushed in the bathroom" after he "said something about it." The court stated that it did not "see any evidence" to support Colson's "claim" about what occurred other than Colson's version of the events. The court stated that it doubted Colson's claim but was "willing to hear more, if you've got some evidence or some way to verify that."

{¶ 7} The court engaged Colson in a conversation on the record in an attempt to "verify" Colson's version of why he left the treatment facility on August 1, 2023. According to the court, there was "reason to doubt [Colson's] credibility." For example, the court questioned Colson about his teeth after he claimed they were "kicked out" in the "ambush."

{¶ 8} The court asked Colson, "Now what would make me think you would want to rehabilitate?" The court asked Colson if he had "proof of this employment [he] had at Popeye's." Colson answered, "I don't have no proof of that right now. I

don't have nothing, sir, right now. All I got is my word, sir." The court stated that it was trying to "test" Colson's credibility and asked how it was to know that Colson was "not going to walk out of" a treatment facility if that is where the court would send him to rehabilitate.

{¶ 9} The court continued to question Colson about his claim that he was working at Popeye's. Colson stated that his supervisor's name was Amber Williams, but he did not know the address or telephone number of his place of employment. Colson stated that he was "cooking chicken and serving chicken" from May to July 2024. After determining Popeye's location at which Colson claimed to have worked, the court instructed Jopek to call Popeye's to verify whether Colson worked there or used to work there and explained its reasoning as follows: "I want to see if he's telling the truth. We'll keep looking for something that's true. Maybe I could have the faith that he can go to a halfway house and actually do it."

{¶ 10} Jopek called Popeye's and spoke with the "general manager on duty." Jopek told the court that she asked the general manager, "[D]oes an Angelo Colson work for you?" Jopek reported that the general manager answered, "[U]nfortunately not." The court stated as follows: "I am just having a lot of doubt issues with the defendant's statement. What he said so far has been unverifiable." At the court's request, Jopek called Popeye's general manager back and, after the conversation, stated the following on the record:

> So they did have an [Amber] Williams that worked there that was fired under suspicion of theft . . . There's no Mr. Angelo Colson in their system and then he also spoke with his head cook who has been there

for 17 years that indicated Angelo Colson has never worked there and they would never pay anyone under the table. It would always be via pay stub.

{¶ 11} Colson stated that he "worked with Angela[1] Williams. I did not know nothing about no theft when she was let go because they said my daughter had broke the window, that's why he let her go." The court asked Colson who got fired, and Colson replied, "Amber Williams." Colson also stated as follows: "But I was working with her at Popeye's. I was doing under the table and I was working for her and she was paying me so I was working there."

{¶ 12} The court stated the following:

We can go on and on with this matter but I don't see any point in it. I just don't find your character to be truthful with the Court or honest based on all your behavior. I looked at this earlier, you put blame on everybody else. I just don't see you rehabilitating. I don't want to waste more time trusting you, put you into a rehabilitation center. I'm going to find you to be a [CCS] violator. You can rehabilitate in the penitentiary. The other two times didn't work, these other jailings didn't work. You didn't walk in here, you got carried in here.

{¶ 13} The court sentenced Colson to 36 months in prison and gave him credit for time served. Colson appeals this order raising two assignments of error for our review.

I. The trial court violated Mr. Colson's Sixth Amendment right to confront witnesses by perpetuating evidence from a telephone conversation conducted outside the hearing, without allowing Mr. Colson the opportunity to cross-examine the source of the information.

---

[1] Although somewhat confusing from the transcript of Colson's CCS violation hearing, it appears that Jopek mistakenly referred to Amber Williams as "Angela" Williams. Immediately after Jopek's mistake, Colson also referred to this person as "Angela" Williams.

II. The trial court violated Mr. Colson's Fourteenth Amendment right to due process by admitting improper hearsay evidence obtained in an ex-parte manner, resulting in an unfair and arbitrary probation revocation hearing.

## II. Law and Analysis

### a. Standard of Review

{¶ 14} Generally, we review a trial court's decision regarding a CCS violation for an abuse of discretion. *State v. Williams*, 2025-Ohio-461, ¶ 9 (8th Dist.). The Ohio Supreme Court has defined abuse of discretion as follows: "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. However, in this case, Colson failed to object to any part of his CCS hearing. Failure to object to a due process violation during a CCS violation hearing waives all but plain error. *See State v. English*, 2021-Ohio-850, ¶ 12-13 (8th Dist.). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). For an error to be "plain," it "must be an 'obvious' defect in the trial proceedings" and it "must have affected 'substantial rights.'" *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The Ohio Supreme Court has mandated that Crim.R. 52(B) "be invoked only in exceptional circumstances to avoid a miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 96 (1978).

### b. CCS Violation Hearings

{¶ 15} Crim.R. 32.3(A) states that the "court shall not impose a prison term for violation of the conditions of a community control sanction . . . except after a hearing at which the defendant shall be present and apprised of the grounds on

which action is proposed." Typically, a CCS violation hearing is a two-step procedure. "A defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her [CCS] . . . . Due process also requires a final hearing to determine whether [the CCS] should be revoked." *State v. Cox*, 2018-Ohio-748, ¶ 15 (8th Dist.).

{¶ 16} This court has "previously held that there is no due process violation in conducting both hearings on the same day." *State v. Macura*, 2019-Ohio-4064, ¶ 17 (8th Dist.), citing *State v. Gaines*, 2019-Ohio-639 (8th Dist.); *State v. Greene*, 2018-Ohio-1965 (8th Dist.), and *State v. Cox*, 2018-Ohio-748 (8th Dist.).

{¶ 17} In this case, it is undisputed that Colson stipulated to probable cause that he violated the terms of his CCS during the preliminary stage of the hearing. Furthermore, Jopek stated that Colson did not comply with any of the terms of his CCS and Colson's attorney said that Jopek's statement was "accurate." Therefore, we are only concerned with the final stage of the hearing at which the trial court revoked Colson's CCS and imposed a prison term.

{¶ 18} A "person subject to [CCS] may be punished for a violation of conditions of [CCS], but only if certain due process rights are observed." *State v. Bailey*, 2016-Ohio-494, ¶ 9 (8th Dist.). Although a CCS revocation hearing is not a criminal trial, the defendant is entitled to the "minimum requirements of due process" at the final hearing, which includes:

> "(a) written notice of the claimed violations of [CCS]; (b) disclosure to the [defendant] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the

right to confront and cross-examine adverse witnesses . . .; (e) a 'neutral and detached' hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [CCS]."

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

{¶ 19} Colson's appeal centers around the argument that his constitutional rights were violated when the trial court "relied on testimony from [Jopek], who stated that . . . Colson's employment status was unable to be confirmed through a phone call to a fast-food restaurant, where . . . Colson claimed to be employed." According to Colson, the trial court's "revocation of [his CCS] was based on constitutionally flawed and procedurally improper evidence."  Colson argues that this violated his Sixth Amendment right to confront witnesses against him pursuant to *Crawford v. Washington*, 541 U.S. 36, 42 (2004), and it violated his "Fourteenth Amendment right to due process by admitting improper hearsay evidence obtained in an ex-parte manner . . . ."

### c. Sixth Amendment Right to Confront Witnesses

{¶ 20} In Colson's first assignment of error, he argues that the trial court's reliance on this "testimonial hearsay" violated the Confrontation Clause.  The Confrontation Clause of the Sixth Amendment to the United States Constitution states as follows:  "In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  (Emphasis added.)  In *Crawford*, the United States Supreme Court noted the long-standing holding that

"this bedrock procedural guarantee applies to both federal and state *prosecutions*." (Emphasis added.) *Id.*, citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

{¶ 21} In *State v. Smith*, 2020-Ohio-1492, ¶ 9 (8th Dist.), this court held that a "community control sanctions violation hearing is not akin to a criminal prosecution." *See also Gagnon*, 411 U.S. at 782 ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ."). In Colson's appellate brief, he cites no case law or other legal authority holding that the Sixth Amendment's Confrontation Clause and *Crawford* apply to CCS violation hearings in addition to criminal prosecutions. Because the Sixth Amendment plainly states that it applies to "criminal prosecutions" and a CCS violation hearing is not a criminal prosecution, we find that the Sixth Amendment and *Crawford* do not apply to CCS violation hearings.

{¶ 22} Accordingly, Colson's first assignment of error is overruled.

### d. Improper Hearsay Evidence

{¶ 23} In Colson's second assignment of error, he argues that the "trial court violated [the due process] principles by admitting unreliable hearsay evidence obtained through an ex parte phone call during the [CCS] hearing . . . ."

{¶ 24} Although the Sixth Amendment right to confrontation does not apply to CCS violation hearings, the Fourteenth Amendment right to due process does. *See Gagnon,* 411 U.S. at 786. However, pursuant to Evid.R. 101(D)(3), the Rules of Evidence do not apply to community-control-sanction-violation hearings.

{¶ 25} In *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.,* 2022-Ohio-1559, ¶ 14, the Ohio Supreme Court reviewed the due process rights, as related to hearsay, that are afforded a parolee at a parole revocation hearing:

> Though a parolee has certain due-process rights at a revocation hearing, he is not entitled to all the procedural rights accorded the defendant in a criminal trial. *See Morrissey* at 480 ("the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"); *see also State ex rel. Coulverson v. Ohio Adult Parole Auth.,* 62 Ohio St.3d 12, 16, 577 N.E.2d 352 (1991). As relevant here, the parole board may admit hearsay evidence because "a parolee contesting revocation does not have the same confrontation rights as does a trial defendant." *Coulverson* at 16. Accordingly, the arresting officer's testimony at the revocation hearing, even if it contained hearsay statements . . . did not violate Mango's due-process rights. Moreover, the record shows that the hearing officer relied on more than the so-called hearsay evidence of which Mango complains. Most notably, the evidence against Mango included body-camera footage from the arresting officer, which contained the officer's observations from the scene and admissions by Mango that he had pushed [the victim] during an argument.

{¶ 26} We first note that the process due at a parole-revocation hearing is the same process due at a CCS-violation hearing. *State v. Heinbach*, 1995 Ohio App. LEXIS 3792 (8th Dist.) (citing *Gagnon*) ("The United States Supreme Court has established that a defendant in a probation revocation hearing is entitled to the same due process rights provided a defendant in a parole revocation hearing."). Therefore, *Mango* applies to this case.

{¶ 27} The *Mango* Court found that the admission of hearsay statements at the revocation hearing did not violate Mango's due process rights. *Mango* at ¶ 14.

The *Mango* Court additionally found that Mango's parole revocation was based on "more than the so-called hearsay evidence . . . ." *Id.*

{¶ 28} In this case, the out-of-court statements at issue are the Popeye's general manager's assertions that Colson did not work there. We are mindful that the topic of Colson's employment is irrelevant to whether he violated the terms of his CCS because Colson's employment was not a condition of his CCS and he stipulated to probable cause that he violated the conditions that were in place. Our task is limited to the determination of whether the court based its decision to revoke Colson's CCS and impose a prison term on not being able to verify Colson's claim that he had worked at Popeye's.

{¶ 29} Upon review, we find the record does not support that the trial court exclusively relied on this "hearsay" information when deciding to revoke Colson's CCS and impose a prison term. The court made clear from the beginning of the hearing that it doubted Colson's truthfulness and credibility. Indeed, when instructing Jopek to call Popeye's, the court stated that it was going to "keep looking for something that's true." Additionally, the court expressed doubt that Colson would "actually do" inpatient treatment if it ordered that disposition. In other words, our review of the CCS-violation-hearing transcript shows that the court based its decision on more than just the "hearsay" information and threw Colson a lifeline when it attempted to verify Colson's employment claim.

{¶ 30} After consideration, we find that Colson has failed to show plain error. In following *Mango*, 2022-Ohio-1559, there was no "obvious defect in the

proceedings," i.e., a due-process violation, when the trial court instructed Jopek to call the Popeye's general manager and Jopek relayed the general manager's statements to the court at Colson's CCS hearing. Furthermore, Colson's "substantial rights" were not violated because the record shows that the court based its decision on the totality of the circumstances. This is not the exceptional case in which plain error must be found to avoid a miscarriage of justice.

{¶ 31} Accordingly, Colson's second assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
MARY J. BOYLE, J., CONCUR