[Cite as *Cleveland v. Harvey*, 2025-Ohio-2005.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CITY OF CLEVELAND,  :

    Plaintiff-Appellee,  :

                    Nos. 113877 and 114017

    v.  :

ODELL HARVEY,  :

    Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** June 5, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2020-CRB-002723

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, and William H. Armstrong, Jr. and Yaa B. Bediako, Assistant Law Directors, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman and John T. Martin, Assistant Public Defenders, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Odell Harvey ("Harvey") appeals the judgment entries of the Cleveland Municipal Court, Housing Division, which extended the length of his

community-control sanctions ("CCS") and imposed a five-day jail sentence as a term of his CCS. For the following reasons, we reverse the trial court's judgment, vacate the extension of Harvey's CCS and vacate the imposition of a five-day jail sentence.

## I. Facts and Procedural History

{¶ 2} On February 11, 2020, a complaint was filed against Harvey alleging that he "did refuse, neglect or fail to comply with a notice . . . requiring the abatement or removal of a violation or requiring compliance with any provision of the Cleveland Building Code or any rule or regulation thereunder . . . in violation of Cleveland Codified Ordinance . . . §3103.25(e), a first-degree misdemeanor . . . ."[1] The complaint concerned real property Harvey owned located at 4087 E. 106th Street in Cleveland (the "Property") and alleged the violations occurred "between the dates of 12/21/2019 and 1/14/2020 . . . ."

{¶ 3} On May 27, 2021, Harvey pled no contest to 12 counts of failure to comply pursuant to Cleveland Cod.Ord. ("CCO") 203.03, which states, "No person shall fail or refuse to comply with any provision of this Health Code or fail to comply with any lawful order issued under this Health Code." CCO 203.03(a). A party's first offense of violating this ordinance is a minor misdemeanor and each

---

[1] Our review of the record shows that a copy of the "notice" of building code violations was attached to the complaint against Harvey. However, this attached "Notice of violation of building and housing ordinances" is dated August 15, 2023, which is three-and-a-half years *after* the complaint was filed. Furthermore, the attached notice is based on an inspection conducted on "43/04/2023." As a result, it is impossible to tell from the record what provisions of the Cleveland Building Code that Harvey was alleged to have violated.

subsequent offense is a first-degree misdemeanor. The court dismissed the remaining 13 counts against Harvey.[2]

{¶ 4} On August 17, 2021, the housing court journalized a judgment entry sentencing Harvey to three years of CCS "set to expire on August 5, 2024." The court imposed various terms and conditions to Harvey's CCS, the gist of which were to maintain the "upkeep and care" of the Property and to "make the necessary repairs" to the Property. In this journal entry, the housing court also imposed a $6,000 fine, which the court "held in abeyance as long as [Harvey] remains in compliance with the orders of his" CCS and ordered Harvey to pay court costs and "his monthly tax payments."

{¶ 5} According to the record in this case, the court held what the transcripts refer to as "status hearings" on January 18, 2023; March 27, 2023; May 8, 2023; July 24, 2023; April 30, 2024 and June 4, 2024. Furthermore, the court held what the transcripts refer to as "probation violation hearings" on August 7, 2023; September 27, 2023; October 18, 2023; February 1, 2024 and April 2, 2024. [3] [4] At these hearings, and in the court-issued journal entries

---

[2] Harvey was charged with failure to comply "between the dates of 12/21/2019 and 1/14/2020," which is 25 days of noncompliance. Although unclear from the record, this may mathematically explain his plea to 12 counts coupled with the dismissal of 13 counts.

[3] In 1995, CCS replaced probation under Ohio's sentencing scheme. *See* Am.Sub.S.B. No. 2; *State v. Walton*, 2009-Ohio-6703, ¶ 5 (9th Dist.) ("Community control under Ohio's current statutory scheme is the functional equivalent of probation under the former statutes.").

[4] The earliest transcript that is part of this record on appeal is dated January 18, 2023. However, our review of the numerous journal entries issued by the court suggests

associated with these hearings, the court modified the terms of Harvey's CCS more times than can be counted. This court cannot discern the modified terms of Harvey's CCS from journal entry to journal entry. Some of the modifications included prohibiting Harvey from selling, gifting or transferring the Property; prohibiting Harvey from selling, gifting or transferring other properties that he owned; staying a $12,000 fine even though the court imposed only a $6,000 fine and staying the "maximum jail sentence of" 18 months even though the court did not impose this sentence.

{¶ 6} Pertinent to this appeal, the court held a status hearing on April 30, 2024. At this status hearing, the court began by stating on the record, "Now calling case . . . City of Cleveland v. Odell Harvey for a status hearing." The court also stated on the record, "We're going to have a status hearing today regarding Mr. Harvey's property."

{¶ 7} During the April 30, 2024 status hearing, the following colloquy took place between the court and Chief Housing Court Specialist Carl Kannenberg ("Kannenberg"):

THE COURT: All right. Is this a community control violation hearing?

KANNENBERG: It's a —

THE COURT: It's ongoing.

KANNENBERG: It's a status — a community control status hearing.

---

that status hearings were held on October 21, 2021; December 16, 2021; June 1, 2022; October 19, 2022 and January 10, 2024 and a CCS-violation hearing was held on August 22, 2022. The record does not include transcripts of these alleged hearings.

THE COURT:   It's marked as a — because there was a finding at the last hearing of community control violation.  So it's labeled PVH — I'm sorry, PV status, so it's a probation violation status hearing that I tend to — I'm starting to more consistently continue them on unless there is some kind of steady compliance and then they'll go back into regular community control status hearings.

{¶ 8}   Kannenberg testified that Harvey was compliant with some of the violations concerning the Property but he was noncompliant with the majority of the violations.  The court stated,

Based on this, there is an ongoing violation and a lack of efforts to comply [with] the Court's order to bring these properties under — into compliance . . . .  Based on that, I am ordering into execution five days . . . in the County Jail . . . .  But I'm not going to order it into execution.  I'm going to have Mr. Harvey report Thursday to serve the five days.

{¶ 9}   Harvey's public defender responded as follows:

Your Honor, . . . [w]e came here today for a status [hearing].  Converting it to a violation hearing, in this situation, is violative of [due process].  I would suggest to the Court that . . . you can schedule a violation hearing, at which time we would have our right to present a defense at the violation hearing to cross examine [Kannenberg] or whoever, other witnesses are going to testify against Mr. Harvey.  But . . . this was not set up to be a revocation hearing, and therefore, it cannot be the basis for a jail term at this time.

{¶ 10} The court stated that its actions were within "the authority of Ohio Revised Code 2929.25 . . . through 28" and "the Court can modify and activate all the things that Mr. Harvey was warned on."  The public defender stated, "[W]hen you're coming in for a violation, you're walking in knowing at the very beginning, this is a revocation hearing, specifically on the record at the beginning."  The court responded as follows:  "Well, it's not specifically — . . . but it's not specifically a revocation hearing.  This was a probation violation status hearing, in which [Harvey]

was told on April 2nd . . . what the Court has ordered him to do . . . at that hearing. And so it was continued for today."

{¶ 11} Also, at this status hearing, the public defender's office stated on the record that a notice of appeal was filed on behalf of Harvey concerning the court's April 3, 2024 order, which found that Harvey violated his CCS and imposed additional CCS conditions. The record indicates that Harvey filed his notice of appeal in *Cleveland v. Harvey*, 8th Dist. Cuyahoga No. 113877 on April 30, 2024, the same day as the status hearing.

{¶ 12} The court issued a journal entry on May 1, 2024, entitled "Judgment entry and order for continued community control violation status hearing with finding of ongoing community control violation ordering 5-day jail sentence into execution beginning May 2, 2024." This journal entry, which referred to the April 30, 2024 proceeding as a "probation violation status hearing," ordered Harvey to serve a five-day jail sentence beginning the next day, May 2, 2024, at 9:00 a.m.

{¶ 13} The court issued another journal entry on May 2, 2024, titled "Journal entry and order denying [Harvey's] oral motion to stay execution of jail time and court ordered disclosure of financial records." In this journal entry, the court denied Harvey's "oral motion to stay the 5-day jail sentence ordered into execution on May 2, 2024, at 9:00 a.m." We note that the record does not contain a transcript of any proceeding that may, or may not, have been held on May 2, 2024; therefore, there is no record of Harvey's oral motion to stay his jail sentence. We

also note that, on May 1, 2024, Harvey filed a motion for stay of jail sentence in this appeal, which this court granted on May 2, 2024.

{¶ 14} The housing court's May 2, 2024 journal entry contained the following excerpt through which the court attempted to explain itself:

> [Harvey] has been found in violation of [CCS] twice, August 22, 2022, and August 7, 2023. After the August 7, 2023 probation violation hearing where [Harvey] was found in violation of [CCS], [Harvey's] hearings were placed in ongoing "probation violation status hearing." [Harvey's] attorney asserts that they were not given notice that the April 30, 2024, hearing was a revocation hearing. However, the Court asserts that the filing and journalization of the Notice of Hearing converting the April 2, 2024, community control hearing into a probation violation hearing and [Harvey's] ongoing community control violation status, including the more recent April 2, 2024, finding [Harvey] in violation of [CCS], along with the reading of the community control warnings that [Harvey] and his attorney were well aware that April 30, 2024, hearing [Harvey] could possibly be sentenced to a term in jail.

{¶ 15} The court issued yet another journal entry on May 6, 2024. In this journal entry, the court stated that Harvey "is reminded he is still under this Court's community control and is deemed to be in ongoing community control, aka probation violation status, for continuously failing to comply with abating the violations listed in the two (2) issued violation notices to repair" various parts of the Property and abide by other terms of his CCS. In this journal entry, the court extended Harvey's CCS, which was set to expire on August 5, 2024, to August 8, 2025.

**{¶ 16}** Harvey filed another notice of appeal in this matter — *Cleveland v. Harvey*, 8th Dist. Cuyahoga No. 114017, which this court consolidated with Case No. 113877. Harvey raises the following assignments of error for our review.

> I. The extension of the term of community control from August 5, 2024 to August 8, 2025 via a journal entry that does not reflect proceedings that occurred in open court is contrary to law and must be vacated.

> II. The court improperly imposed a jail term and improperly extended the length of the community control term without properly finding a violation of community control sanctions.

## II. Law and Analysis

**{¶ 17}** In Harvey's assignments of error, he argues that the court's extension of his CCS by one year and three days and its imposition of a five-day jail sentence are contrary to law. We agree.

### a. CCS for Misdemeanor Convictions

**{¶ 18}** R.C. 2929.25 authorizes a court to impose CCS for misdemeanor convictions, and under subsection (B) of this statute, "the sentencing court retains jurisdiction over the offender and the period of community control for the duration of the period of community control." This retention of jurisdiction includes the authority to modify the CCS, substitute a CCS term or impose an additional CCS term. *Id.*

**{¶ 19}** R.C. 2929.25(D)(2), however, limits the court's authority to modify an offender's CCS by requiring the court to first find that the offender violated his or her CCS prior to extending the length of CCS, imposing a more restrictive term of CCS or imposing a jail term:

[I]f an offender violates any condition of a [CCS], the sentencing court may impose upon the violator one or more of the following penalties:

(a) A longer time under the same community control sanction if the total time under all of the community control sanctions imposed on the violator does not exceed the five-year limit specified in division (A)(2) of this section;

(b) A more restrictive community control sanction;

(c) A combination of community control sanctions, including a jail term.

### b. CCS-Violation Hearings

{¶ 20} Generally, we review a trial court's decision regarding a CCS violation for an abuse of discretion. *State v. Williams*, 2025-Ohio-461, ¶ 9 (8th Dist.). The Ohio Supreme Court has defined abuse of discretion as follows: "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 21} A "person subject to [CCS] may be punished for a violation of conditions of [CCS], but only if certain due process rights are observed." *State v. Bailey*, 2016-Ohio-494, ¶ 9 (8th Dist.). In *State v. English*, 2021-Ohio-850, ¶ 11 (8th Dist.), this court held the following regarding the process due prior to finding a CCS violation:

A person subject to community control sanctions is entitled to certain due process rights if they are to be punished for a violation of their community control, including: (1) written notice of the claimed violations; (2) disclosure of the evidence against them; (3) an opportunity to be heard and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder of the evidence relied upon and the reason

for revocation. *Bailey* at ¶ 10, citing *State v. Davis*, 8th Dist. Cuyahoga No. 93959, 2010-Ohio-5126, ¶ 26.

*See also Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

**{¶ 22}** A community-control-violation hearing is typically a two-step procedure. *State v. Colson*, 2025-Ohio-1266, ¶ 15 (8th Dist.). "A defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her" CCS. *State v. Cox*, 2018-Ohio-748, ¶ 15 (8th Dist.). "Due process also requires a final hearing to determine whether community control should be revoked." *Id.* There is no error when a court conducts both hearings on the same day. *Id.* at ¶ 16.

### c. Analysis

**{¶ 23}** Although unclear from the record, it appears that the housing court is attempting to convert "status hearings" to CCS-violation hearings at the court's whim without legal authority and without affording Harvey his due-process rights. Additionally, it appears that the housing court has created an "ongoing probation violation status" for both Harvey and, confusingly, his hearings. The housing court also appears to believe that its self-devised "conversion" attempts, along with labeling Harvey an "ongoing" CCS violator, satisfy due-process requirements. Because there is no legal basis for the court's actions, this court is unable to find any Ohio cases with analogous fact patterns or legal analysis. Nonetheless, what follows is a cautionary tale of what a housing court cannot do.

### i. An Example of the Court Holding a CCS-Violation Hearing

{¶ 24} On March 29, 2024, the court issued a journal entry captioned "Notice of Hearing: Violation of [CCS] O.R.C. § 2929.25(B)." This journal entry states, in part, as follows: "There is probable cause to believe that [Harvey] has violated the terms of [CCS] in this case . . . . You are ordered to appear IN PERSON for a Violation of [CCS] Hearing to determine if you have violated your sentence of [CCS]. The hearing will take place on April 2, 2024 at 1:00 P.M . . . ." This notice advised Harvey that the City must present evidence to prove the allegations against him and that Harvey will have an opportunity to present a defense. This notice also served to show that the housing court knew how to comply with the law regarding notice of CCS-violation hearings.

### ii. The Corresponding Journal Entry Does Not Accurately Reflect the Court's Proceedings

{¶ 25} At the April 2, 2024 CCS-violation hearing associated with the March 29, 2024 notice, the court began by stating on the record, "We're here for a probation violation hearing . . . ." The court also referred to the proceeding on the record as "a community control violation hearing, also known as a probation hearing . . . ." Despite evidence that Harvey was noncompliant, the court did not make a finding that Harvey was in violation of his CCS in open court, at this hearing. However, it did modify the terms of his CCS by ordering Harvey to "bring in all proof of all outstanding debts and proof of all properties you own," stating that "the Court needs a better assessment of Mr. Harvey's finances." Specifically, the court ordered

Harvey to provide "All proof of debts, mortgages, and proof of vehicles that are owned in your name and your wife's name." The court then stated on the record, "I'll see you back here April 30th for a status hearing."

{¶ 26} The court issued a journal entry concerning the April 2, 2024 hearing on April 3, 2024. The journal entry improperly stated that Harvey "is hereby found IN VIOLATION of Community Control terms . . . ." *No* such finding was made in open court. "Because Ohio courts speak through their journal entries, it is essential for those journal entries to be an accurate and truthful reflection of the court's proceedings." *In re C.N.,* 2019-Ohio-179, ¶ 3 (8th Dist.).

### iii. An Example of the Court Holding a Status Hearing

{¶ 27} The court held a status hearing on April 30, 2024, and, although Harvey had notice of this status hearing, it is important to note that the court did not issue the same separate "Notice of Hearing: Violation of [CCS] O.R.C. § 2929.25(B)" that it did on March 29, 2024 for the April 2, 2024 CCS-violation hearing. Rather, buried within its April 3, 2024 journal entry is a line that reads: Harvey "is ordered to appear in person . . . for the Community Control Violation Status hearing on April 30, 2024 . . . ." Because the court treated its "notice" of a CCS-violation hearing differently than it treated its "notice" of a status hearing, we conclude that the housing court appreciated the difference between a status hearing and a CCS-violation hearing.

{¶ 28} At this April 30, 2024 status hearing, the court ordered Harvey to serve a five-day jail term. This sanction falls under R.C. 2929.25(D)(2) in that it is

a "jail term" under subsection (c) and it is a "more restrictive" CCS term under subsection (b). The court did not have the authority to impose a jail term as part of Harvey's CCS absent a finding that Harvey violated the terms of his CCS. *Id.* Additionally, the court did not have the authority to find that Harvey violated the terms of his CCS without affording Harvey his due-process rights. Upon review, we find that neither of these things happened. *See, e.g., Walton Hills v. Olesinski,* 2020-Ohio-5618, ¶ 25 (8th Dist.) ("[T]he trial court did not make a formal determination that Olesinski violated the terms of his [CCS]. Rather, the trial court delayed the matter further to effectuate its impermissible modification of Olesinski's [CCS]. By failing to avail itself to the limited jurisdiction afforded to it under R.C. 2929.25(D), the trial court lost its opportunity to find Olesinski to be in violation of the terms of his originally imposed" CCS.).

{¶ 29} Additionally, in the May 6, 2024 journal entry, the court improperly extended the length of Harvey's CCS by one year and three days. This also falls within the limited jurisdiction of R.C. 2929.25(D) and cannot be done without a finding that Harvey violated the terms of his CCS, which in turn, cannot be done without due process. *See Cleveland v. Kushlak*, 2024-Ohio-973, ¶ 28 (8th Dist.) ("An extension of the length of time of a misdemeanor offender's [CCS] is a penalty under R.C. 2929.25(D)(2) and cannot be imposed unless the trial court first finds that the offender violated his" CCS.).

{¶ 30} In short, the housing court's attempt to convert a status hearing into a CCS-violation hearing has no basis in the law and does not comport with an alleged

CCS-violator's right to due process. *See State v. Jones*, 2016-Ohio-2626, ¶ 13 (8th Dist.) (Stewart, J., dissenting) ("Because of the court's hastiness in converting the status hearing to a termination proceeding without any prior notice, Jones was left with no option but to assert his defense in a beseeching fashion, without any evidence to support his claims. Had Jones been afforded a proper opportunity to present a defense, he may have wished to call [witnesses] to corroborate his assertion[s.]"); *Cleveland v. Kushlak*, 2022-Ohio-4402, ¶ 48 (8th Dist.) (remanding the case to the housing court "to hold a hearing to determine the status of, not Kushlak's compliance with, the conditions of his" CCS).

{¶ 31} A court has no discretion to act contrary to the law. *Johnson,* 2021-Ohio-3304, at ¶ 39 ("We take this opportunity to make it clear that courts lack the discretion to make errors of law . . . ."); *State v. Boles*, 2010-Ohio-278, ¶ 26 (2d Dist.) ("No court — not a trial court, not an appellate court, nor even a supreme court — has the authority, within its discretion, to commit an error of law."). With this in mind, we caution the housing court that, although it has discretion to modify CCS imposed for misdemeanor convictions, its discretion is not unlimited. *See Cleveland v. Southwest Inv. LLC*, 2024-Ohio-1271, ¶ 35 (8th Dist.) (Gallagher, E.T., concurring in judgment only) (expressing "significant concerns with the pattern employed in the housing court, including its use and implementation of overly punitive conditions of" CCS).

{¶ 32} Accordingly, Harvey's assignments of error are sustained. The court's judgment is reversed and the extension of Harvey's CCS to August 8, 2025 and the

order imposing on Harvey a five-day jail term is vacated. Absent this improper CCS extension, Harvey's CCS were set to expire on August 5, 2024. We find that Harvey's CCS did, indeed, expire on August 5, 2024. The housing court no longer has jurisdiction over Harvey and his period of CCS in this case.

{¶ 33} Judgment reversed and vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to follow this judgment and terminate community control sanctions in this case.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
MARY J. BOYLE, J., CONCUR